Opinion issued May 28, 2009















     


In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00771-CR




STACY MICHAEL MALONEY, Appellant

v.

THE STATE OF TEXAS, Appellee




On Appeal from the 56th District Court
Galveston County, Texas
Trial Court Cause No. 05CR2694




O P I N I O N

          A jury found appellant, Stacy Michael Maloney, guilty of online solicitation
of a minor.


 The jury assessed punishment at 4 years and 113 days in prison and
imposed a $113 fine. In three issues, appellant (1) challenges the legal and factual
sufficiency of the evidence supporting his conviction; (2) asserts that the trial court
erred by overruling appellant’s challenges for cause to two venire members; and (3)
questions the constitutionality of the statute making online solicitation of a minor a
criminal offense. 
          We affirm. 
Background
          On October 5, 2005, appellant entered an Internet romance chat room under the
screen name “Entendres.” Appellant initiated an online conversation with
“Brandytx132004” (hereafter “Brandy”). Appellant approached Brandy in the chat
room by asking, “Do you like older?” Brandy replied, “Sure. I guess. Why?” 
Appellant responded, “Great,” and asked whether it was “okay” that he was a 47-year-old white male. Brandy answered, “Hi. I’m 13 . . . is that ok?” Appellant
replied, “Wow. Yeah, sure. That is so young. So I can be daddy, if you like.” 
Appellant then directed Brandy to his online photograph and said, “You know how
much daddy loves you.” 
          Unknown to appellant, Brandy was actually an online persona created by
Detective Roger Williamson of the Kemah City Police Department. Detective
Williamson worked as part of a task force investigating Internet child predators and
had entered the romance chat room that morning to portray 13-year-old Brandy. 
          Later that day, the conversation between appellant and Brandy turned sexual
in nature. Appellant told Brandy that he wanted to kiss her and that he could “teach”
her. Appellant said, “[T]ouching is good always.” Brandy asked, “Where?” 
Appellant responded, “Your boobies. And you can touch me. Feels good, I know. 
You are free, okay?” 
          Appellant also told Brandy that he wanted to “get together” with her. Brandy
said that she lived in Kemah, Texas, and appellant told her that he lived in San
Antonio. Appellant and Brandy agreed that they could meet in a park near Brandy’s
home. 
          Appellant asked Brandy to send a photo of herself. Detective Williamson
emailed a picture of his wife taken when she was 13 in the mid-1980’s. After
receiving the photo, appellant told Brandy that she looked “grown up” and “seem[ed]
more than 13.” Brandy again asked if appellant whether it was “ok” that she was only
13 years old. Appellant assured her that it was, and told her “I like you so much now
and we will have fun I know.”
          Between October 5, 2005 and October 17, 2005, Brandy and appellant chatted
for a total of 17 hours. As the two chatted, the conversation became progressively
more sexually explicit. Appellant said that he wanted to be alone with Brandy in a
motel room. When she asked what they would do there, appellant said they could
kiss and “make out.” The conversation progressed until appellant expressly told
Brandy that he wanted to have sex with her. Brandy said that she did not want to get
pregnant. Appellant assured Brandy that they would be careful and that he would
bring condoms. Brandy told appellant that she was a virgin and expressed concern
that having sex would hurt. Appellant replied that it would hurt the first time but
assured Brandy that she would “feel really good afterward.” 
          Appellant and Brandy also spoke twice on the telephone. In the phone calls,
twenty-eight-year old Kemah police officer Erica Yates portrayed Brandy. During
the calls, appellant expressed his desire to have sex with Brandy at a motel. After the
first telephone conversation, appellant told Brandy online that she seemed older than
13. 
          Throughout all conversations, appellant continually referenced his desire that
he and Brandy pretend that they were father and daughter. Appellant referred to
himself as “Daddy,” repeatedly asked Brandy if she wanted to call him “Daddy,” and
referred to Brandy as “baby girl.” 
          During the online conversations, Brandy expressed concern several times that
appellant might find her too young because she was only 13 years old. Appellant
always indicated that he was pleased with her age and told her that her young age
would make their bond and attachment stronger. Appellant commented that her age
would be “a plus” with regard to pretending they were father and daughter. Appellant
explained that her age was “perfect” because no one would suspect when they were
out together that they were not father and daughter.
          Brandy also continually expressed concern that her mom would “kill” her if she
found out about appellant. Appellant also expressed concern regarding Brandy’s
mother discovering their relationship. Appellant told Brandy that he would also be
in “trouble” if her mother discovered what they were doing. Brandy asked why
appellant would be in trouble. Appellant responded that it was because she was a
minor and that her mom might “not understand.”
          On October 18, 2005, appellant made the 200-mile drive from San Antonio to
a Kemah park to pick up Brandy. When he arrived at the park, appellant was arrested
by Officer Williamson. In appellant’s truck the police found a box of condoms, a
prescription bottle containing Viagra, and computer printouts with information
regarding two local motels that appellant and Brandy had discussed. 
          Appellant was charged with the offense of online solicitation of a minor. At
trial, appellant did not deny that he went to Kemah to have sex with Brandy. Instead,
appellant defended against the charge by arguing that he believed that Brandy was an
adult woman who was engaging in role-playing with him. More precisely, appellant
asserted that he believed that Brandy, an adult woman, was pretending to be a 13-year-old girl and that he was pretending to be her “daddy.” 
          The jury found appellant guilty of online solicitation of a minor. This appeal
followed. 
Legal and Factual Sufficiency
          Appellant’s first issue challenges the legal and factual sufficiency of the
evidence to support his conviction. 
          The indictment charged appellant with online solicitation of a minor pursuant
to Penal Code section 33.021(c). In October 2005, when Brandy and appellant
corresponded, Penal Code section 33.021(c) provided that a person committed the
offense of online solicitation of a minor if, inter alia, the person, over the Internet or
by electronic mail or a commercial online service, knowingly solicited a minor to
meet another person, including the actor, with the intent that the minor engage in
sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or
another person. Act of May 25, 2005, 79th Leg., R.S., ch. 1273, § 1, 2005 Tex. Gen.
Laws 4049, 4050 (amended 2007) (current version at Tex. Penal Code § 33.021(c)
(Vernon Supp. 2008)). Subsection (a) defined the term “minor” to mean “an
individual who represents himself or herself to be younger than 17 years of age” or
“an individual whom the actor believes to be younger than 17 years of age.” Id. 
(current version at Tex. Penal Code § 33.021(a)). 
          A two-paragraph indictment charged appellant with knowingly soliciting a
minor to engage in sexual contact. In one paragraph, the term “minor” was defined
as “an individual who represented to the Defendant to be younger than 17 years of
age.” In the second paragraph, “minor” was defined as “an individual whom the actor
believed to be younger than 17 years of age.” 
          To support his legal and factual sufficiency challenges, appellant contends that
“the evidence fails to sufficiently establish that appellant knowingly (1) solicited a
person whom he believed to be younger than 17 years of age or (2) solicited a person
who represented herself to be younger than 17 years of age.” Appellant asserts that
“the evidence reveals appellant believed Brandy to be an adult, merely acting the role
of a thirteen-year-old girl.” Appellant further asserts that “although [Detective]
Williamson attempted to deceive appellant into believing ‘Brandy’ was an actual
thirteen-year-old girl, the manner in which he represented ‘Brandy’ suggested that she
was an adult playing the role of a teenage girl.” 
 
A.      Legal Sufficiency Review
          When reviewing the legal sufficiency of the evidence to support a conviction,
we determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Laster v. State, 275 S.W.3d 512,
518 (Tex. Crim. App. 2009) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789 (1979)). In conducting our review, we assess all of the evidence in the
light most favorable to the prosecution. Id. (citing Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789). We must presume that the trier of fact resolved any conflicting inferences
in favor of the prosecution and defer to that resolution. Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 326, 99 S. Ct. at 2793).
          In addition to the testimony of Detective Williamson, the State admitted
printouts of the online conversations between appellant and Brandy into evidence. 
The evidence, when viewed in the light most favorable to the prosecution, shows that
Brandy represented to appellant that she was 13 years old on numerous occasions
during their online chats. When appellant initiated contact with her, Brandy
immediately informed appellant that she was 13 years old. Throughout their online
conversations, Brandy repeatedly expressed concern that appellant may have a
problem with her being only 13 years old. The evidence showed that, in turn,
appellant repeatedly reassured Brandy that her young age was not a problem and was,
in fact, to him, “a plus.”
          When viewed in the light most favorable to the prosecution, the evidence also
shows that appellant believed that Brandy was less than 17 years old. In the initial
online chat, appellant asked Brandy whether she had school that day. Brandy told
appellant that she was home-schooled by her mother at night. When Brandy first told
appellant that she was only 13 years old, appellant replied, “That is so young.”
          In other online chats, appellant told Brandy that he would be “in trouble” if her
mother found out about their relationship because she was “a minor.” When Brandy
told appellant that she planned to write about him in her diary, appellant expressed
concern about Brandy’s mother finding the diary. Appellant expressed his concern
about the diary more than once. 
          Appellant instructed Brandy to erase his telephone number on her mother’s
caller ID after he had called. Appellant informed Brandy that she could call him
collect and offered to buy her a prepaid telephone card that she could use to call him. 
Appellant told Brandy that they needed to be careful not to be discovered because he
did not want anyone to keep them apart. 
          The evidence also showed that the meeting between appellant and Brandy was
secretive. Appellant planned to meet Brandy in a park, not at her home, and then
planned to have sex with her in a motel.
          Appellant explained to Brandy that her young age would be perfect for them
to pretend to be father and daughter. He commented that Brandy’s youth would
facilitate the believability of their father-daughter relationship when the two were in
public together. 
          Viewing the evidence in the light most favorable to the prosecution, we
conclude that the evidence is such that a reasonable juror could have found either (1)
that Brandy represented herself as being under the age of 17 or (2) that appellant
believed that Brandy was under the age of 17. We hold that the evidence is legally
sufficient to support appellant’s conviction.
B.      Factual Sufficiency
          We next turn to the factual sufficiency of the evidence. When conducting a
factual sufficiency review, we begin with the assumption that the evidence is legally
sufficient. See Laster, 275 S.W.3d at 518. An appellate court can deem the evidence
to be factually insufficient in two ways: (1) the evidence supporting the conviction
is “too weak” to support the factfinder’s verdict or (2) considering conflicting
evidence, the factfinder’s verdict is “against the great weight and preponderance of
the evidence.” Id. (citing Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App.
2006)). 
          When conducting a factual sufficiency analysis, we must defer to the jury’s
findings, and we cannot conclude that the conviction is factually insufficient simply
because we might disagree with the jury’s verdict. Watson, 204 S.W.3d at 414. In
addition, the Court of Criminal Appeals has identified three basic rules to guide our
analysis: (1) all of the evidence must be considered in a neutral light and not in a light
most favorable to the explicating verdict; (2) the evidence may be found to be
factually insufficient only when necessary to prevent manifest injustice; and (3) an
explanation must be provided regarding why the evidence is too weak to support the
verdict or why the conflicting evidence greatly weighs against the verdict. Id. 
          In our factual-sufficiency review, we must consider the most important
evidence that the appellant claims undermines the jury’s verdict. Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). In this regard, appellant cites evidence to
disprove that he believed Brandy was a minor and to support his defense that he
believed that Brandy was an adult role playing the part of a 13-year-old girl. 
Appellant points out that Yahoo! designated the romance chat room in which
appellant met Brandy to be for users over the age of 18 and “admonished [users] that
they must be over the age of eighteen” to enter the chat room. Appellant further
points out that “the chat room guidelines directed users to ‘Be honest about your age’
and warned, ‘If you are too young to sign up, do not attempt to lie about your age.’” 
          Appellant notes that he explained to Brandy in their chat that his screen name,
Entendres, meant “basically word play” and “has a double or ambiguous meaning.” 
Appellant argues that his “screen name reflects his desire to become a character and
role-play with another consenting adult.” 
          Without citing the record, appellant asserts, “the evidence reveals that adults
in chat rooms often role-play, becoming fictitious characters.” Appellant contends
that the record shows that he was aware that adults often role play in chat rooms. 
Specifically, appellant points to his questioning of Brandy during their first chat
regarding whether she “was a girl,” “despite the fact that her screen name was clearly
that of a female.” 
          Appellant also points to the portions of the chats in which Brandy agreed to be
his “daughter” and indicated that she would call him “Daddy.” Appellant cites
various portions of the chats in which he and Brandy discussed the daughter-daddy
role-playing. 
          Appellant further cites a portion of his chat with Brandy in which he asked her
whether she could “come play.” When Brandy asked what he meant, appellant
explained to her that he was asking whether she was available to chat, and then stated
to her, “[I]t’s all fun I know.” Appellant contends this evidence shows that he “fully
accepted [Detective] Williamson’s role as ‘Brandy,’ believing that he and Brandy
were both adults having ‘fun’ simply acting out fictitious characters.” 
          Much of the evidence cited by appellant could arguably be viewed to support
his defensive theory that he believed Brandy was an adult playing the role of a 13-year-old girl. However, as discussed under our legal-sufficiency review, ample
evidence exists in the record to support the State’s theory that appellant believed
Brandy was an actual 13-year-old girl. 
          In addition, the State offered evidence to counter evidence cited by appellant. 
Detective Williamson acknowledged that the chat room in which appellant contacted
Brandy was an over 18 chat room. But the detective also testified that, in his
experience, children frequently enter chat rooms intended only for adults. When
viewed neutrally, the evidence regarding the age requirement for the chat room could
support either the defense’s or the State’s theory of the case. A jury is allowed to use
its common sense and apply its common knowledge, observation, and experience
gained from the ordinary affairs of life when giving effect to the inferences that may
reasonably be drawn from the evidence. Aguilar v. State, 263 S.W.3d 430, 434 (Tex.
App.—Houston [1st Dist.] 2008, pet. ref’d) (citing Taylor v. State, 71 S.W.3d 792,
795 (Tex. App.—Texarkana 2002, pet. ref’d)). The jury here could have rationally
inferred that appellant believed he was chatting with an adult because he was in an
adult chat room. On the other hand, based on common life experience, the jury could
also have reasonably and rationally inferred that appellant was hoping to find an
underage girl who had entered the chat room and was willing to chat with an older
man. 
          Similarly, when viewed neutrally, the evidence cited by appellant regarding
role playing could support either the defense’s or the State’s theory depending on the
inferences the jury chose to make. Appellant contends that his confirmation with
Brandy that she was “a girl” supports his position that he knew that chat rooms are
used for role playing. Such an inference would be reasonable and rational. 
Nonetheless, a rational jury could also infer that appellant was confirming that
Brandy was “a girl” and not an adult woman or a boy. 
          Undeniably, the evidence cited by appellant shows that he wanted to engage
in role playing with Brandy. However, it does not necessarily follow that he believed
that Brandy was an adult pretending to be a 13-year-old girl. Role playing is not
necessarily limited to adult role playing. From the evidence, the jury could have
reasonably inferred that appellant wanted to pretend to be Brandy’s “daddy” because
he believed that she was a 13-year-old girl. As mentioned, appellant asserts that his
use of the words “fun” and “play” with regard to chatting with Brandy indicate that
he believed he was corresponding with a woman engaged in role playing. However,
a jury may have reasonably inferred that he choose these words because he believed
that they would be words familiar and appealing to a child. 
          In sum, evidence cited by appellant does not invalidate or fatally undermine the
verdict. At most, appellant offers competing interpretations of the evidence. It was
the jury’s role to draw reasonable inferences and deductions from the evidence, and
we properly defer to the jury as the finder of fact. See Johnson v. State, 23 S.W.3d,
7 (Tex. Crim. App. 2000). 
          Appellant also cites evidence that he contends shows Brandy did not represent
herself as being a minor. Rather, appellant asserts that “the manner in which
[Detective] Williamson represented ‘Brandy’ suggested to appellant that she was an
adult attempting to portray herself as a minor.” In this regard, appellant points to the
photograph of “Brandy” that Detective Williamson sent to appellant. As mentioned,
the photograph is a picture of Detective Williamson’s wife from the mid-1980’s when
she was 13 years old. Appellant contends that the photograph is outdated and
“displays a girl in a fashion of dress and hairstyle entirely atypical of present-day
teenagers.” Appellant notes that Detective Williamson testified that he no longer uses
the photograph in his investigations. Appellant contends that Brandy’s vernacular
was also outdated. In the chats, Brandy used the word “neat,” which appellant
contends, is “word not commonly used by today’s teenagers.” 
          Citing several phrases and word choices used by Brandy in the online chats,
appellant contends that Brandy “displayed a maturity about sex and relationships
uncharacteristic of most thirteen-year-old girls.” Appellant also points to the two
telephone conversations between him and Officer Yates, posing as Brandy. Appellant
contends that Officer’s Yates’s voice was “unmistakably that of an adult woman.” 
Appellant asserts that Officer Yates voice was “huskier and raspier” than that of “a
typical thirteen-year-old girl.” Appellant points out that Officer Yates admitted that
she has been a smoker for nine years. Appellant claims that, during the telephone
conversations, Brandy “communicated with appellant in an adult manner, employing
an advanced vocabulary and understanding.” Appellant argues, “The maturity
displayed by Brandy on the tapes, coupled with the fact that her voice was obviously
that of an adult, validated appellant’s belief that he was interacting with an adult—not
a minor.” 
          Appellant does not cite an objective basis in the record to show that the great
weight and preponderance of the evidence contradicts the jury’s verdict. See Lancon
v. State, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Instead, the evidence cited
by appellant is the type that must be weighed and evaluated by the finder of fact. See
id. A jury’s decision is not manifestly unjust merely because it resolved conflicting
views of the evidence in favor of the State instead of appellant. See Cain v. State, 958
S.W.2d 404, 410 (Tex. Crim. App. 1997). The jury was in the best position to weigh
and evaluate the evidence, and we properly afford due deference to that
determination. See id.
          After reviewing all of the evidence in a neutral light, we conclude that the
evidence supporting the conviction is not so weak that the verdict seems clearly
wrong and manifestly unjust; nor is the evidence supporting the conviction
outweighed by the great weight and preponderance of the contrary evidence rendering
the verdict clearly wrong and manifestly unjust. See Watson, 204 S.W.3d at 414–17.
We hold that the evidence is factually sufficient to support the judgment of
conviction.
          We overrule appellant’s first issue. 
Challenges for Cause
          In his second issue, appellant contends,
The trial court erred by overruling appellant’s timely and proper
challenge for cause to [prospective] jurors Dyess and Anselmo. As a
result of the trial court’s failure to grant his challenge for cause to these
two objectionable jurors, appellant was forced to use peremptory strikes
on the two objectionable jurors, resulting in the seating of two
objectionable jurors on the panel.
A.      Legal Principles Governing Challenges for Cause
          “A challenge for cause is an objection made to a particular juror, alleging some
fact which renders the juror incapable or unfit to serve on the jury.” Tex. Code Crim.
Proc. Ann. art. 35.16(a) (Vernon 2006). A prospective juror may be challenged for
cause if he or she has a bias or prejudice against any of the law applicable to the case
on which the defense is entitled to rely. Id. art. 35.16(c)(2). 
          “The test is whether the bias or prejudice would substantially impair the
prospective juror’s ability to carry out his oath and instructions in accordance with
law.” Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Before a
prospective juror can be excused for cause on this basis, the law must be explained
to him and he must be asked whether he can follow that law regardless of his personal
views. Jones v. State, 982 S.W.2d 386, 390 (Tex. Crim. App. 1998). The proponent
of a challenge for cause has the burden of establishing his challenge is proper.
Feldman, 71 S.W.3d at 747. The proponent does not meet his burden until he has
shown that the venireperson understood the requirement of the law and could not
overcome his prejudice well enough to follow it. Id.
          We review a trial court’s ruling on a challenge for cause with “considerable
deference” because the trial court is in the best position to evaluate the venireperson’s
demeanor and responses. Russeau v. State, 171 S.W.3d 871, 879 (Tex. Crim. App.
2005); Blue v. State, 125 S.W.3d 491, 497 (Tex. Crim. App. 2003). We will reverse
a trial court’s ruling on a challenge for cause “only if a clear abuse of discretion is
evident.” Blue, 125 S.W.3d at 497. 
          When the record does not contain a clearly objectionable declaration by the
venireperson, or the record demonstrates a vacillating or equivocal venireperson, we
accord great deference to the trial judge who had the better opportunity to see and
hear the person. Swearingen v. State, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). 
The trial court is able to consider important factors such as demeanor and tone of
voice that do not come through when reviewing a cold record. Banda v. State, 890
S.W.2d 42, 54 (Tex. Crim. App. 1994); see Bell v. State, 233 S.W.3d 583, 591 (Tex.
App.—Waco 2007, pet. dism’d). We review the totality of the voir dire testimony to
determine whether it supports the trial court’s finding with respect to whether the
prospective juror is able to follow the law as instructed. See King v. State, 29 S.W.3d
556, 568 (Tex. Crim. App. 2000); Murphy v. State, 229 S.W.3d 334, 339 (Tex.
App.—Amarillo 2006, pet. ref’d).
B.      Veniremember Anselmo
          Veniremember Anselmo was individually questioned at the bench. He began
by informing the trial court he believed that he had heard of the case and disclosed
that he thought it involved a large of amount of pornography discovered on a
computer. After he was told that it was not a pornography case, but an online
solicitation case, Veniremember Anselmo stated that he still thought he would “have
a hard time” and said, “I don’t think I would be fair.” Veniremember Anselmo
explained that he was “big enough to know” that he should not trust anyone on the
Internet. Veniremember Anselmo continued that he “didn’t feel comfortable that a
grown person can be solicited on the Internet.” 
          The prosecutor asked whether “[a]s a juror, would you be biased or prejudiced
for the defendant or against the defendant?” Veniremember Anselmo responded, “I
would be prejudiced against the defendant if he did something that I know that I
would not have enough common sense to do.” The prosecutor then asked, “But you
would still base your decision on the facts presented and nothing else?” 
Veniremember Anselmo responded, “Correct.” The prosecutor continued, “And if
the facts weren’t there, you could find the defendant not guilty?” Veniremember
Anselmo stated, “That’s correct.” 
          The defense then asked whether Veniremember Anselmo was “leaning” toward
the State. Veniremember Anselmo responded by stating that, if he is told that
someone is contacted on the Internet, and “they fall for it,” then that person is
responsible for “for his own actions.” At that point, the trial court interjected, “Mr.
Anselmo, you’ve jumped the gun. You have already added a lot of facts on this case. 
Right now there are no facts on this case.” Veniremember Anselmo responded, “Fair
enough.” The trial court then asked, “Since there are no facts, can you be fair to both
sides?” Veniremember Anselmo answered, “Absolutely. I am just giving my long
opinions.” 
          Following this exchange, the defense challenged Veniremember Anselmo for
cause. The trial court denied appellant’s challenge for cause, and appellant used a
peremptory challenge to strike Veniremember Anselmo. When appellant later
requested an additional peremptory strike, that request was also denied.
          Appellant contends that the trial court abused its discretion by denying his
challenge for cause because Veniremember Anselmo was biased “as a matter of law.”
We disagree. 
          From the record, it is apparent that Veniremember Anselmo expressed doubts
regarding his ability to be fair under the specific factual scenarios that he had created
in his own mind. He did not indicate that he could never be fair to a defendant or that
he had a predilection for the State. To the contrary, when asked whether he would
base his decision on the facts presented and “nothing else,” Veniremember Anselmo
responded affirmatively. He confirmed that he would find for appellant “if the facts
weren’t there.” Appellant expressly told the court that he “absolutely” would be fair
to both sides. Given the record, we conclude that the trial court did not abuse its
discretion by denying appellant’s challenge for cause to Veniremember Anselmo and,
concomitantly, did not abuse its discretion by denying appellant’s request for an
additional peremptory strike. See Brown v. State, 913 S.W.2d 577, 580 (Tex. Crim.
App. 1996); see also Robinson v. State, 989 S.W.2d 456, 461 (Tex. App.—Houston
[1st Dist.] 1999, pet. ref’d) (“It is clear that if venire members testify unequivocally
as to their ability to follow the law despite personal prejudices, the trial court does not
abuse its discretion in overruling a challenge for cause on that basis.”).
C.      Veniremember Dyess
          Veniremember Dyess was also called to the bench to be individually
questioned. He told the trial court that, 20 years earlier, his daughter had been
molested by a neighbor. Veniremember Dyess informed the trial court that “I don’t
have the closure that I need to have.” He told the trial court that he had not realized
he still had unresolved feelings regarding his daughter’s molestation but that the
instant case had brought those feelings to light. 
          When the State asked him whether his unresolved feelings may affect him in
this case, Veniremember Dyess answered, “I would like to say no; but I can’t say with
100 percent. But, you know, I’m a fair person and about justice.” The State then
asked, “If the evidence that the State presents you doesn’t show that the defendant is
guilty beyond a reasonable doubt, would you be able to find him not guilty?” 
Veniremember Dyess responded, “Absolutely.” When asked whether he would base
his decision on the evidence and not on his emotions, Veniremember Dyess
responded affirmatively. 
          Lastly, the State asked, “Would you let your emotional feelings enter into your
deliberations at all?” The State then clarified that a juror must promise to base his
decision on the evidence and “nothing else.” The State asked, “Could you promise
the Court that you could do that?” Veniremember Dyess responded, “I would
certainly give it all I had to do that. I can’t say for 100-percent certainty that I could,
but I would certainly try.”
          When questioned by the defense, Veniremember Dyess again said that he could
not be “100 percent” certain that his emotions relating to his daughter’s molestation
would not affect his decision in the case. He said that it was “possible” that it might
affect his decision. During the defense’s questioning, Veniremember Dyess
explained, “I’m not leaning any way. . . . I’m just saying fairness is to the process
[sic] that I can tell you that I do have some lingering feelings that I don’t have closure
on.” Veniremember Dyess stated further that “to the best of my ability, I would be
fair.” When asked whether he could put his feelings aside, Veniremember Dyess
stated that he would look at the facts but “who knows what your conscience dictates.” 
Veniremember Dyess last statement was that, if chosen for the jury, he would give
“all [his] effort” to be fair, but “there is still some sensitivities there.” 
          Appellant moved to dismiss Veniremember Dyess for cause, and the trial court
denied the request. Appellant used a peremptory challenge to strike Veniremember
Dyess. When appellant requested an additional peremptory strike, the trial court also
denied that request.
          With respect to Veniremember Dyess, the record reflects a vacillating or
equivocal veniremember. On such a record, we must defer to the district court’s
discretion. See Blue, 125 S.W.3d at 499; Brown, 913 S.W.2d 580. We hold that the
trial did not abuse its discretion when it denied appellant’s challenge for cause to
Veniremember Dyess and did not abuse its discretion by denying appellant’s request
for an additional peremptory strike. 
          We overrule appellant’s second issue.
Constitutional Challenges
          In his third issue, appellant contends, 
The Crime of Online Solicitation of A Minor, as delineated in section
33.021 of the Texas Penal Code, violates the First Amendment of the
United States Constitution and Article I, Section 8 of the Texas
[Constitution] in that it is overly broad, infringing upon an individual’s
freedom of speech and right to privacy.


 Moreover, section 33.021 is
also unconstitutionally vague since it fails to define the term fantasy. As
such, the trial court erred in denying appellant’s motion to dismiss and
quash the indictment.


 
A.      Section 33.021: Online Solicitation of a Minor 
          When the instant offense occurred, Penal Code section 33.021(c) defined the
offense of online solicitation of a minor as follows:
A person commits an offense if the person, over the Internet or by
electronic mail or a commercial online service, knowingly solicits a
minor to meet another person, including the actor, with the intent that
the minor will engage in sexual contact, sexual intercourse, or deviate
sexual intercourse with the actor or another person.

Act of May 25, 2005, 79th Leg., R.S., ch. 1273, § 1, 2005 Tex. Gen. Laws 4049, 4050
(amended 2007) (current version at Tex. Penal Code § 33.021(c)) (Vernon Supp.
2008)).


 Subsection (a) defined the term “minor” to mean “[a]n individual who
represents himself or herself to be younger than 17 years of age” or “an individual
whom the actor believes to be younger than 17 years of age.” Id. (current version at
Tex. Penal Code § 33.021(a)). With respect to defenses, Subsection (d) provided, 
It is not a defense to prosecution under Subsection (c) that:
          (1) the meeting did not occur; 
(2) the actor did not intend for the meeting to occur; or
(3) the actor was engaged in a fantasy at the time of commission of the
offense.

Id. (current version at Tex. Penal Code § 33.021(d)). 
B.      Principles Governing Constitutionality Review
          We review the constitutionality of a criminal statute de novo, as a question of
law.


 See State v. Salinas, 982 S.W.2d 9, 10–11 (Tex. App.—Houston [1st Dist.]
1997, pet. ref’d). When reviewing the constitutionality of a statute, we presume that
the statute is valid and that the legislature has not acted unreasonably or arbitrarily. 
Rodriguez v. State, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). If a statute can be
construed in two different ways, one of which sustains its validity, we apply the
interpretation that sustains its validity. Duncantell v. State, 230 S.W.3d 835, 843
(Tex. App.—Houston [14th Dist.] 2007, pet. ref’d). The party challenging the statute
carries the burden to establish its unconstitutionality. Rodriguez, 93 S.W.3d at 69. 
We must uphold the statute if we can determine a reasonable construction that will
render it constitutional. Ely v. State, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel
Op.] 1979). When an appellant challenges a statute as both unconstitutionally
overbroad and vague, we address the overbreadth challenge first. Duncantell, 230
S.W.3d at 843.
 
C.      Overbroad Challenge
          A statute is impermissibly overbroad if, in addition to proscribing activities that
may be constitutionally prohibited, it sweeps within its coverage speech or conduct
protected by the First Amendment. Bynum v. State, 767 S.W.2d 769, 772 (Tex. Crim.
App. 1989); see also Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982). As described above, subsection
33.021(d) provides that an accused cannot defend against an online solicitation of a
minor charge by asserting that he was engaged in a fantasy at the time of commission
of the offense. See Tex. Penal Code Ann. § 33.021(d). Appellant contends that the
statute is overly broad because subsection (d) “prohibits a defendant from availing
himself of the defense of engaging in the lawful activity of fantasy.” (Italics in
original.) Appellant argues that subsection (d) “impermissibly restricts a person’s
freedom of expression and thought.” Appellant asserts that “[t]his statute also
breaches an individual’s right to privacy in that it intrudes on one’s freedom to
associate and maintain privacy in one’s associations under the First Amendment.” 
Appellant reasons that “[a]n adult, such as appellant, should be able to participate in
fantasy with another consenting adult” and, accordingly, should be allowed to raise
“fantasy” as a defense. 
          With regard to an overbreadth challenge, the United States Supreme Court has
explained, 
Because of the wide-reaching effects of striking down a statute on its
face at the request of one whose own conduct may be punished despite
the First Amendment, we have recognized that the overbreadth doctrine
is “strong medicine” and have employed it with hesitation, and then
“only as a last resort.”
New York v. Ferber, 458 U.S. 747, 769, 102 S. Ct. 3348, 3361 (1982) (citing
Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S. Ct. 2908, 2916 (1973)). In keeping
with this principle, a statute will not be invalidated for overbreadth merely because
it is possible to imagine some unconstitutional application. In re Shaw, 204 S.W.3d
9, 15 (Tex. App.—Texarkana 2006, pet. ref’d) (citing Members of City Council v.
Taxpayers for Vincent, 466 U.S. 789, 800, 104 S. Ct. 2118, 2126 (1984)). The United
States Supreme Court has stated that before a statute regulating conduct will be
invalidated on its face, the overbreadth must be substantial. Broadrick, 413 U.S. at
615, 93 S. Ct. at 2918. The court recognized that, particularly when conduct and not
merely speech is involved, the overbreadth of a statute must “not only be real, but
substantial as well, judged in relation to the statute’s plainly legitimate sweep.” Id. 
          In New York v. Ferber, the United States Supreme Court applied the substantial
overbreadth test to uphold a child pornography statute. 458 U.S. at 773–74, 102 S.
Ct. at 3363–64. The Ferber court recognized that, although the statute could
conceivably be utilized to suppress protected expression, such as pictures used in
medical textbooks, the court concluded that these arguably impermissible applications
of the statute amounted to no more than a tiny fraction of materials within the
statute’s scope. Id. at 773, 102 S. Ct. at 3363. The court further explained that the
statute presented the “paradigmatic case of a state statute whose legitimate reach
dwarfs its arguably impermissible applications” and that “whatever overbreadth exists
should be cured by thorough case-by-case analysis of the fact situations to which its
sanctions . . . may not be applied.” Id. at 773–74, 102 S. Ct. at 3363.
          In Shaw, the Texarkana Court of Appeals determined that Penal Code section
21.12, which prohibits sexual contact or relations between employees of primary or
secondary schools and students, is not unconstitutionally overbroad. 204 S.W.3d at
15. There, the appellant asserted the statute was overbroad because it applies to all
school employees and students regardless of age. Id. at 14–15. She argued the statute
infringed on her “liberty interest to engage in private sexual conduct between
consenting adults and makes criminal what other adults can do freely and without
restraint.” Id. 
          The Shaw court reasoned, “[W]e cannot say the statute is impermissibly broad
when judged in relation to the statute’s plainly legitimate sweep, i.e., employees and
students in primary and secondary schools, when the vast majority of such students
are undoubtedly not adults.” Id. Noting that “[t]he record before us contains no data
about what percentage of secondary school students affected by this statute are
adults,” the Shaw court concluded that “there is no evidence before us indicating
Section 21.12 ‘reaches a substantial amount of constitutionally protected conduct.’” 
Id. 
          In People v. Smith, the Illinois Appellate Court, Third District, determined that 
the Illinois indecent solicitation of a child statute was not unconstitutionally
overbroad. 806 N.E.2d 1262, 1265 (Ill. Ct. App. 2004). There, the defendant
asserted that a person age 17 or older would be engaging in constitutionally protected
speech if he asked his 16-year-old spouse for an act of sexual penetration, yet that
person could be prosecuted for indecent solicitation of a child because no exception
exists for married persons under the Illinois statute. Id. The Smith court rejected the
defendant’s argument, concluding that the legitimate goal of the statute—to prevent
sexual exploitation and abuse of children—far surpassed any potential unlawful
applications. Id. The court reasoned that the occasions on which the State might seek
to enforce the statute with regard to the hypothetical presented by the defendant
would be exceedingly rare. Id. 
          As in Ferber, Shaw, and Smith, this case presents circumstances in which the
legitimate goal of the statute far exceeds any potential unlawful applications. The
prevention of sexual exploitation and abuse of children addressed by the Texas online
solicitation of a minor statute constitutes a government objective of surpassing
importance. See Ferber, 458 U.S. at 773, 102 S. Ct. at 3363; Shaw, 204 S.W.3d at
15; Smith, 806 N.E.2d at 1265. As was the case in Ferber and Smith, the incidence
of the State seeking to prosecute two consenting adults engaging in online role
playing or “fantasy” would likely be exceedingly low. See Ferber, 458 U.S. at 773,
102 S. Ct. at 3363; Smith, 806 N.E.2d at 1265. Considering the overly broad scope
and purpose of section 33.021, we have been given no basis to believe that
prosecutions of consenting adults engaging in role-playing would amount to any more
than a “tiny fraction” of all prosecutions under the statute. See Ferber, 458 U.S. at
773, 102 S. Ct. at 3363; Shaw, 204 S.W.3d at 15. 
          In sum, the overbreadth of Penal Code section 33.021 is not substantial when
judged in relation “to its plainly legitimate sweep.” See Broadrick, 413 U.S. at 615,
93 S. Ct. at 2918. Accordingly, we conclude that Penal Code section 33.021 is not
unconstitutionally overbroad, as claimed by appellant. 
D.      Vagueness Challenge
          In the second part of his constitutional challenge, appellant contends that Penal
Code section 33.021 is unconstitutionally vague. The Court of Criminal Appeals
instructs us that a statute is void for vagueness if it fails to define the criminal offense
with sufficient definiteness that ordinary people can understand what conduct is
prohibited and in a manner that does not permit arbitrary and discriminatory
enforcement. State v. Holcombe, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). 
          The entirety of appellant’s vagueness argument is as follows: “Section 33.021
is unconstitutionally vague because it fails to define ‘fantasy.’ The statute fails to
provide citizens with sufficient information to determine whether the activity they are
participating in is in contravention to the law.”
          We begin by noting that the Court of Criminal Appeals has made clear that a
statute is not unconstitutionally vague merely because the words or terms employed
in the statute are not specifically defined. Engelking v. State, 750 S.W.2d 213, 215
(Tex. Crim. App. 1988). Rather, when a word is not defined in a statute, we give it
its plain meaning. Parker v. State, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999). 
          More importantly, section 33.021 does not make it a criminal offense simply
to engage in a fantasy, as appellant seems to suggest. Rather, section 33.021
unambiguously provides that a person is prohibited from knowingly soliciting a
minor over the Internet, or through other electronic media, to meet him or another
person with the intent that the minor will engage in sexual contact, sexual intercourse,
or deviate sexual intercourse with him or another person. See Tex. Penal Code
Ann. § 33.021(c). Once that conduct is established, the statute provides that an
accused may not defend against the charge by arguing that he was merely engaging
in a fantasy. See Tex. Penal Code Ann. § 33.021(d). Thus, the statute does not
criminalize the act of fantasy, unless, as part of that “fantasy,” a person engages in the
conduct proscribed in Penal Code section 33.021. 
          In making a challenge to the facial constitutionality of a statute, appellant must
first satisfy the burden of establishing that the statute is unconstitutional as applied
to him. See Bynum, 767 S.W.2d at 774. Here, appellant presents no argument to
satisfy his burden of proving the statute is unconstitutionally vague, either as applied
to him specifically, or, necessarily, in all of its applications. See Sanchez v. State, 995
S.W.2d 677, 683 (Tex. Crim. App. 1999) (stating that to be vague in all its
applications, statute must necessarily be vague as to litigant). 
          Even if appellant had presented such an argument, it would be without merit.
One of the charges brought against appellant was that he knowingly solicited Brandy,
whom he believed to be under the age of 17 years, over the Internet, to meet him to
engage in sexual contact. As discussed supra, the evidence presented at trial
supported this charge. Section 33.021 unambiguously proscribes such conduct in a
manner that can be understood by an ordinary person. Thus, section 33.021 is
sufficiently clear to give appellant adequate notice that his conduct was a criminal
offense. See Tex. Penal Code Ann. § 33.021(c). As a result, appellant’s vagueness
challenge fails. See Sanchez, 995 S.W.2d at 683.
          We hold that section 33.021 is not unconstitutionally vague. We further hold
that the trial court did not err by denying appellant’s motion to quash the indictment.
          We overrule appellant’s third issue. 
                                                         Conclusion
          We affirm the judgment of the trial court.



 

                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Jennings, Keyes, and Higley.

Publish. See Tex. R. App. P. 47.2(b).