# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## ON REHEARING

---

## NO. 03-14-00094-CR

---

**William Albert Mower, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 13-1008-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

We issued an opinion and judgment in this case on February 19, 2016, and then withdrew the opinion and judgment on February 26, 2016. We substitute the following opinion and judgment in place of those issued on February 19, 2016.

A jury convicted appellant William Albert Mower of online solicitation of a minor, a second-degree felony, which was enhanced to a first-degree felony due to a previous felony conviction for attempted rape. *See* Tex. Penal Code §§ 12.42, 33.021(c), (f). The jury assessed punishment at twenty-six years' imprisonment. On appeal, appellant challenges the constitutionality of the statute under which he was convicted and the admissibility of evidence of two prior convictions during the punishment phase of trial. We will affirm the trial court's judgment.

## BACKGROUND

Sergeant Blane Rodgers was the only witness to testify during the guilt-innocence phase of trial. Rodgers testified that he worked in the Cyber Crimes Unit of the Texas Attorney General's Office. He further testified that part of his job involved creating profiles in online chat forums and using the profiles to pose as a minor in an attempt to identify child predators. In June 2013, Rodgers was using a profile he had created in an online chat forum called MocoSpace. MocoSpace required users to be above a certain age to create a profile, so Rodgers created a profile of a twenty-two-year-old woman but then made postings tending to indicate that the fictional woman was in fact a minor who had lied about her age, including status updates suggesting she was a young girl heading into her freshman year in high school. Appellant began chatting with the fictional girl, at which time the "girl" told appellant at least twice that she was in fact fourteen years old and not twenty-two. In response, appellant made several sexually explicit remarks, sent the girl a photograph of his genitalia, and proposed that the two of them have sex. Appellant and the "girl" portrayed by Rodgers made arrangements to meet at a park, and appellant said he would bring beer and told the "girl" to wear a loose dress with no underwear.

Rodgers and other law-enforcement officers went to the park and observed appellant arriving at the park carrying brown bags containing beer cans. Rodgers later interrogated appellant, and a videotape of the interrogation was admitted into evidence at trial. In the videotape, appellant admitted that he had gone to the park pursuant to pre-arrangements to meet a girl, that the girl was fourteen years old, that he had sent her sexually explicit messages, that he "shouldn't have done it" and knew his conduct was wrong, and that the purpose of meeting her at the park was "hooking up

2

and having sex." Appellant stated at one point in the interrogation that he did not think he actually would have had sex with the girl because his "conscience would have [gotten] to [him]" due to her young age, but he also agreed with the detective at a later point that he "probably would have sexually assaulted" the girl if she had shown up at the park.

At the conclusion of trial, the jury found appellant guilty of online solicitation of a minor. The trial court then heard and overruled appellant's objections to two exhibits referencing previous convictions that the State offered during the punishment phase of trial. After a hearing on punishment, the jury found the State's enhancement allegation of a previous conviction for attempted rape true and assessed punishment at twenty-six years' imprisonment. This appeal followed.

## DISCUSSION

In three issues, appellant argues that (1) the statute under which he was convicted is unconstitutional; (2) the trial court erred in admitting documents regarding a Nebraska conviction during the punishment phase of trial; and (3) the trial court erred in admitting documents regarding a New York conviction during the punishment phase of trial. We will address each issue below.

### *Constitutionality of Statute*

Appellant challenges the constitutionality of section 33.021(c) of the Texas Penal Code, the statute under which he was convicted. Specifically, appellant contends that section 33.021(c), when combined with other provisions in the statute, is unconstitutionally overbroad and vague because it prohibits a person from engaging in fantasy age-play with another consenting

adult. At the time that the offense in this case occurred, section 33.021 stated the following, in relevant part:

> (a) In this section:
>
> > (1) "Minor" means:
> >
> > (A) an individual who represents himself or herself to be younger than 17 years of age; or
> >
> > (B) an individual whom the actor believes to be younger than 17 years of age.
> >
> > . . . .
>
> (c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.
>
> (d) It is not a defense to prosecution under Subsection (c) that:
>
> > (1) the meeting did not occur;
> >
> > (2) the actor did not intend for the meeting to occur; or
> >
> > (3) the actor was engaged in a fantasy at the time of commission of the offense.

Act of May 25, 2005, 79th Leg., R.S., ch. 1273, § 1, 2005 Tex. Gen. Laws 4049, 4050, amended by

Act of May 21, 2007, 80th Leg., R.S., ch. 610, § 2, 2007 Tex. Gen. Laws 1167, 1167-68 and

Act of May 27, 2007, 80th Leg., R.S., ch. 1291, § 7, 2007 Tex. Gen. Laws 4344, 4349-50, amended

by Act of May 22, 2015, 84th Leg., R.S., ch. 61, § 1, 2015 Tex. Gen. Laws 1036 (current version at Tex. Penal Code § 33.021).[1]

### A.     Standard of Review

We review the constitutionality of a criminal statute de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When a party challenges a statute as unconstitutional, we ordinarily begin with a presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Id*. at 14–15; *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). The party challenging the statute has the burden to establish that the statute is unconstitutional. *Ex parte Lo*, 424 S.W.3d at 15. This presumption does not apply when the government seeks to restrict speech based on content. *Id*. Content-based regulations are presumptively invalid, and the government bears the burden to rebut that presumption. *Id*.

In this case, appellant seems to argue that the statutory provision at issue is content-based. We conclude, as have several other Texas courts, that the provision is a conduct-based statute subject to a presumption that the statute is valid. *See id.* at 16–17 (deeming section 33.021(c) a conduct-based provision because "it is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense."); *Ex parte Victorick*,

---

[1] Effective September 1, 2015, the legislature changed the definition of "minor" under section 33.021(a)(1)(A) from "an individual who represents himself or herself to be younger than 17 years of age" to "an individual who is younger than 17 years of age." Act of May 22, 2015, 84th Leg., R.S., ch. 61, § 1, 2015 Tex. Gen. Laws 1036. In the same amendment, the legislature also changed section 33.021(d) to delete the prohibition on a defendant raising a defense that he did not intend for the meeting to occur or that he was engaging in fantasy at the time of commission of the offense. Act of May 22, 2015, 84th Leg., R.S., ch. 61, § 2, 2015 Tex. Gen. Laws 1036.

No. 09-13-00551-CR, 2014 WL 2152129, at *2–3 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication), *cert. denied, Victorick v. Texas*, 135 S. Ct. 1557 (2015); *see also Ex parte Zavala*, 421 S.W.3d 227, 231 (Tex. App.—San Antonio 2013, pet. ref'd); *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

In challenging the constitutionality of a statute, a defendant may challenge the statute on its face or as it is applied to him. *Scott v. State*, 322 S.W.3d 662, 665 n.1 (Tex. Crim. App. 2010), *abrogated on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014); *Fluellen v. State*, 104 S.W.3d 152, 167 (Tex. App.—Texarkana 2003, no pet.). Here, appellant makes a facial challenge to the statute because he does not argue that the statute is unconstitutional as it applies to the specific facts of this case but rather that the language of the statute itself renders the statute unconstitutional. *See Scott*, 322 S.W.3d at 665 n.1 (facial challenge is claim that statute, by its terms, always operates unconstitutionally, while "as applied" challenge is claim that statute operates unconstitutionally as applied to defendant's particular circumstances). In making a facial challenge, a defendant must show that the statute operates unconstitutionally in all of its applications. *Rosseau*, 396 S.W.3d at 557.

## B. Overbreadth Challenge

In his first argument challenging the constitutionality of the statute, appellant contends that the combination of subsection (a)(1)(A), which defined "minor" as "an individual who represents himself or herself to be younger than 17 years of age," and subsection (d), which prohibited a defendant from raising a defense that he was engaging in fantasy at the time of the

6

commission of the offense, renders the statute overbroad because it prohibits a person from engaging in fantasy age-play with another consenting adult.

According to the First Amendment overbreadth doctrine, a statute is facially invalid—and therefore operates unconstitutionally in all of its applications—if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep." *Ex parte Lo*, 424 S.W.3d at 18 (quoting *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003)). The overbreadth doctrine should be employed with hesitation and only as a last resort. *New York v. Ferber*, 458 U.S. 747, 769 (1982).

Some of our sister courts have already held that section 33.021(c) is not unconstitutionally overbroad based on the same (or a variation of the same) argument as the one made by appellant here. *See Ex parte Wheeler*, 478 S.W.3d 89, 96 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (rejecting defendant's contention that section 33.021(c) as combined with subsection (d) was unconstitutionally overbroad because it prohibited adult from soliciting fellow adult pretending to be child as part of fantasy); *Ex parte Victorick*, 2014 WL 2152129, at *5 (rejecting defendant's argument that section 33.021(c) was unconstitutionally overbroad because it criminalized otherwise legal communications with person who could be older than seventeen); *Maloney*, 294 S.W.3d at 626–28 (rejecting defendant's assertion that section 33.021(c) as combined with subsection (d) was unconstitutionally overbroad because it prohibited consenting adults from engaging in fantasy age-play). Further, although the Texas Court of Criminal Appeals struck down a different provision of section 33.021 as unconstitutional, the court specifically addressed section 33.021(c) and observed that "[s]uch solicitation statutes exist in virtually all states and have been

7

routinely upheld as constitutional because 'offers to engage in illegal transactions [such as sexual assault of a minor] are categorically excluded from First Amendment protection.'" *Ex parte Lo*, 424 S.W.3d at 16 (quoting *United States v. Williams*, 553 U.S. 285, 297 (2008)). The *Lo* court went on to note that the First Court of Appeals upheld the constitutionality of section 33.021(c) and that although section 33.021(c) was not at issue in *Lo*, the section "provide[d] an excellent contrast" to the provision declared unconstitutional in *Lo*. *Id*. at 17.

We reach the same conclusion as our sister courts and hold that section 33.021(c) is not unconstitutionally overbroad. Although appellant argues that section 33.021(c), as combined with subsection (d), could prohibit a person from soliciting another consenting adult to engage in fantasy age-play, a statute should not be invalidated for overbreadth merely because it is possible to imagine an unconstitutional application. *Ex parte Wheeler*, 478 S.W.3d at 94; *Ex parte Ellis*, 279 S.W.3d 1, 20 (Tex. App.—Austin 2008), *aff'd*, 309 S.W.3d 71 (Tex. Crim. App. 2010); *Maloney*, 294 S.W.3d at 627; *In re Shaw*, 204 S.W.3d 9, 15 (Tex. App.—Texarkana 2006, pet. ref'd). The vast majority of transactions proscribed by the statute are transactions designed to lead to clearly criminal conduct (an adult engaging in sexual activity with a minor). Further, as our sister courts have pointed out, the government objective of the solicitation statute—to protect children from sexual exploitation and abuse—is of surpassing importance, and that legitimate and important objective greatly outweighs the threat of ensnaring the occasional innocent adult engaging in fantasy age-play. *Ex parte Wheeler*, 478 S.W.3d at 95; *Maloney*, 294 S.W.3d at 628; *see also Ferber*, 458 U.S. at 757 ("The prevention of sexual exploitation and abuse of children constitutes a

government objective of surpassing importance."). Accordingly, we conclude that section 33.021(c) is not unconstitutionally overbroad.

### C. Vagueness Challenge

In challenging the statute for vagueness, appellant contends that the statute is impermissibly vague because it chills protected expression between consenting adults engaging in fantasy age-play and because it fails to define "fantasy." A statute is void for vagueness if it fails to define the criminal offense with sufficient definiteness that ordinary people can understand the conduct that is prohibited and if it fails to provide explicit standards to those who enforce and apply it. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). A statute is not void for vagueness merely because the words or terms employed in the statute are not specifically defined. *Holcombe*, 187 S.W.3d at 499; *Maloney*, 294 S.W.3d at 628. If the words used in a statute are not defined within the statute, we give the words their plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999); *Maloney*, 294 S.W.3d at 628. Challenged terms can be measured by common understanding and practices or construed in the sense generally understood. *See Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979); *State v. Wofford*, 34 S.W.3d 671, 680 (Tex. App.—Austin 2000, no pet.).

When measuring the statute by common understanding and practices and when construing the statute as generally understood, the statute in place at the time of appellant's conviction gave a person of ordinary intelligence fair notice of the prohibited conduct: a person could not by an electronic communication solicit a minor or a person representing himself or herself to be a minor to meet the person for the purpose of sexual activity, and if a person did so, that person

9

could not rely on a defense that he was engaging in fantasy at the time of the offense. *See Grayned*, 408 U.S. at 110-12 (statute need only give fair notice in light of common understanding); *United States v. Petrillo*, 332 U.S. 1, 8 (1947) ("The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more."). The term "fantasy" itself, although not specifically defined within the statute, is easily understood by people of common intelligence by giving it its plain and common meaning, which is all that is required. *See Grayned*, 408 U.S. at 110-12; *Petrillo*, 332 U.S. at 8; *Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012); *Ely*, 582 S.W.2d at 419; *Wofford*, 34 S.W.3d at 680. We note that appellant's argument throughout his brief that the statute infringes on protected speech—the only possible interpretation of which is two adults engaging in fantasy age-play—shows that the prohibited conduct and the term "fantasy" are clear and easily understood.

Further, because the statute adequately details the prohibited conduct, the enforcement of the statute is not relegated to the subjective interpretation of police officers or prosecuting attorneys. *See Bynum v. State*, 767 S.W.2d 769, 775 (Tex. Crim. App. 1989); *Duncantell v. State*, 230 S.W.3d 835, 846 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The language of the statute prohibiting an adult from using an electronic communication to solicit a minor or a person representing him or herself as a minor to meet for sexual activity provides adequate guidance to law-enforcement personnel such that the risk of improperly motivated selective enforcement is obviated. *See Bynum*, 767 S.W.2d at 775; *Duncantell*, 230 S.W.3d at 846.

10

Because the statute sets forth the criminal offense with sufficient definiteness that ordinary people can understand the conduct that is prohibited and provides explicit standards to those who enforce and apply the law, we hold that the statute is not impermissibly vague. *See Grayned*, 408 U.S. at 108, 110–12; *Holcombe*, 187 S.W.3d at 499; *Bynum*, 767 S.W.2d at 775; *Duncantell*, 230 S.W.3d at 845–46; *see also Ex parte Ellis*, 309 S.W.3d 71, 86 (Tex. Crim. App. 2010) ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.")

### D.     Conclusion Regarding Constitutional Issue

Because we conclude that section 33.021(c) as it existed at the time of the offense in this case is not unconstitutionally overbroad or vague, we overrule appellant's first issue.

### *Evidentiary Challenges*

In his second and third issues, appellant contends that the trial court erred in admitting evidence of his prior convictions during the punishment phase of trial because the evidence was insufficient to prove that he was the person convicted. Specifically, appellant challenges the trial court's admission of a certified copy of an "Amended Complaint" and "Journal Entry and Order" from Nebraska showing a conviction for failure to register as a sex offender and a certified copy of a "Certificate of Conviction" from New York showing a conviction for first-degree attempted rape.

Section 3(a) of article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of a non-capital criminal trial and allows the admission of any evidence the trial court "deems relevant to sentencing, including but not limited

11

to the prior criminal record of the defendant, . . . [and] evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant." *See* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1). We use an abuse-of-discretion standard in reviewing a trial court's decision to admit punishment evidence. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010).

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). No specific documents or mode of proof is required to prove the two elements. *Id.* The State may prove both of the elements in a number of ways, including documentary proof that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921–22. Any type of evidence, documentary or testimonial, might suffice. *Id.* at 922. The factfinder looks at the totality of the evidence to determine whether the State proved the prior conviction and the defendant's connection to it beyond a reasonable doubt. *Id.* at 923.

Although the State presented exhibits relating to two previous convictions, the only prior conviction used for enhancement purposes—that is, alleged in the indictment and set forth in the jury charge on punishment—was appellant's conviction for attempted rape in New York. The evidence presented by the State consisted of four exhibits: (1) Exhibit 5, a certified copy of an "Amended Complaint" and "Journal Entry and Order" from Nebraska showing a conviction for failure to register as a sex offender; (2) Exhibit 6, a certified copy of a "Certificate of Conviction" from New York showing a conviction for attempted rape; (3) Exhibit 7, a certified copy of a file

12

from the Texas Department of Public Safety Sex Offender Registry; and (4) Exhibit 8, a fingerprint card showing fingerprints taken from appellant on the day of the punishment hearing. In addition to the exhibits, the State presented a fingerprint expert who took the fingerprints from appellant on the day of the hearing and testified that the fingerprints taken that day matched those contained in Exhibit 7, the file from the sex-offender registry.

The first page of Exhibit 5, the document from Nebraska, is an "Amended Complaint" and alleges that "William Mower," with a birth date of June 12, 1966, committed the offense of failing to register as a sex offender in 2008. The second page is a "Journal Entry and Order" signed by a Nebraska judge indicating that "William Mower" was sentenced for the failure-to-register offense in 2008. Exhibit 6, the document from New York, states that "William A. Mower," with a birth date of June 1, 1966, was convicted of first-degree attempted rape on December 17, 1998, in Chenango County, New York. Part of the judgment states that "[appellant] is certified to be a sex offender." Exhibit 7, the file for "William A. Mower" from the Texas sex-offender registry, contains a significant amount of identifying information. The file includes, among other things, a date of birth of June 12, 1966; a social-security number; a physical description of the offender; a photograph of the offender; a description of the underlying offense, which is described as first-degree attempted rape in Chenango County, New York with a disposition date of December 17, 1998; and the offender's fingerprints. Exhibit 8, the fingerprint card, is dated February 4, 2014, the date of the punishment hearing, and contains appellant's name; fingerprints; date of birth of June 12, 1966; and signature. The State's fingerprint expert, Janet Boring, testified that she took the fingerprint sample from appellant on the day of the hearing. She testified that she

13

then compared the fingerprints she took from appellant to the fingerprints in Exhibit 7, the record from the sex-offender registry, and confirmed that the fingerprints were a match.

Thus, the fingerprints taken from appellant (whose name is listed in the indictment in this case as William Albert Mower) on the fingerprint card on the day of the hearing match with the fingerprints in the Texas sex-offender registry file of "William A. Mower." The birth date of June 12, 1966, also matches between the fingerprint card and registry file. The trial judge and jury were also able to observe appellant in the courtroom and compare him to the photos in the registry file. Further, the registry file shows that the reason that appellant was a registered sex offender was that he was convicted of first-degree attempted rape in Chenango County, New York, on December 17, 1998. The "Certificate of Conviction" matches the registry file by showing that "William A. Mower" was convicted of first-degree attempted rape on December 17, 1998, in Chenango County, New York. The "Amended Complaint" and accompanying "Journal Entry and Order" from Nebraska indicates that "William Mower," with a birth date of June 12, 1966, was subject to the Sex Offender Registration Act and was required to register accordingly.

Considering the totality of the evidence, the jury could view the identifying information contained in the sex-offender-registry file, including the fingerprints and photographs, in conjunction with the identifying information in the other exhibits and the fingerprint expert's testimony, and determine that the evidence contains sufficient information to establish the existence of a prior conviction for attempted rape and appellant's identity as the person convicted. *See id*. at 923–25.

14

Appellant points out that the birth date listed on the "Certificate of Conviction" from New York was June 1, 1966, while the birth date listed in all of the other exhibits was June 12, 1966. However, given all of the other evidence matching appellant to the attempted-rape conviction, the jury could have reasonably determined that the birth date on the "Certificate of Conviction" was a clerical error, as the date was identical to the date listed in all the other documents with the exception of one missing number. Appellant also argues that the cause number of the attempted rape conviction listed in the sex-offender-registry file was not the number listed in the "Certificate of Conviction." However, the documents show that the reason the numbers do not match is because the sex-offender registry file lists the cause number of the conviction, while the "Certificate of Conviction" lists the indictment number, not the cause number.

We conclude that the totality of the evidence is sufficient to show that the State proved the prior conviction and appellant's connection to it. *See id*. The trial court did not abuse its discretion in admitting the challenged exhibits. Accordingly, we overrule appellant's second and third issues.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment of conviction.

                                                   _____

                                                  Cindy Olson Bourland, Justice

Before Justices Pemberton, Goodwin, and Bourland

Affirmed on Rehearing

Filed:   April 7, 2016

Do Not Publish