ACCEPTED
01-14-00868-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/14/2015 10:33:36 AM
CHRISTOPHER PRINE
CLERK

In the Court of Appeals for the
First District Court of Appeals
No. 01-14-868-CR

| | |
|---|---|
| Ex Parte | On Appeal from<br>The 155th District Court<br>Austin County, Texas<br>Trial Court Cause No. 2014V-0074 |
| Stuart Oland Wheeler | |

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
5/14/2015 10:33:36 AM
CHRISTOPHER A. PRINE
Clerk

Postsubmission Brief

**To Justices Jennings, Higley, and Huddle:**

Appellant Stuart Oland Wheeler files this *Postsubmission Brief* to aid the Court in its decision.

<u>Avoiding This Court's Error in Lo</u>

In *Ex Parte Lo*, the Court of Criminal Appeals wrote:

> Because the court of appeals used the wrong standard of review for addressing constitutional challenges to a penal statute that restricts speech based on its content, it reached the wrong conclusion.

*Ex Parte Lo*, 434 S.W.2d 10, 14 (Tex. Crim. App. 2013).

The court went on to cite *R.A.V. v. City of St. Paul* for the proposition that "content-based regulations of speech are presumptively invalid." *Lo* at 14 fn 6 (citing to *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)). The paragraph in *R.A.V.* from which the court drew this proposition begins:

> The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid.

*R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (citations omitted).

1

Thus, according to the United States Supreme Court, content-based regulations of expressive conduct are presumptively invalid. There is no distinction between content-based restrictions on speech, and content-based restrictions on expressive conduct.

In the First Amendment context, in fact, "speech" includes expressive conduct.

The State's contention is that the speech forbidden by Section 33.021(c) and (d) is conduct rather than speech. To the extent that this distinction is meaningful, it is false.

The distinction is not meaningful: "The free speech protections of the First Amendment are implicated when the government seeks to regulate protected speech or expressive conduct." *Ex parte Thompson*, 414 S.W.3d 872, 876 (Tex. App.—San Antonio 2013), *petition for discretionary review granted* (Nov. 27, 2013), *aff'd,* 442 S.W.3d 325 (Tex. Crim. App. 2014).

This court in *Maloney* cited *Broadrick* for the proposition that "before a statute regulating conduct will be invalidated on its face, the overbreadth must be substantial." *Maloney v. State*, 294 S.W.3d 613, 627 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd.) (*citing Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). But in *New York v.*

*Ferber* the Supreme Court had applied this rule—that overbreadth must be substantial to invalidate a statute on its face—to a statute regulating speech (the distribution of books). *New York v. Ferber*, 458 U.S. 747 (1982). So the rule is the same for expressive conduct as for speech. Whether Section 33.021 regulates "speech" or conduct," it regulates expression, and so it stands only if it is not substantially overbroad.

Even if the distinction between conduct and speech were meaningful, though, it would be false in the case of Section 33.021. The statute criminalizes communications that solicit. While wordless conduct can become protected under the First Amendment because it is expressive, words do not become unprotected—nor even less protected—merely because we call them "conduct."

In *Lo* the Court of Criminal Appeals made an off-hand remark in dicta about Section 33.021(c) forbidding conduct: "it is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense." *Ex parte Lo*, 424 S.W.3d 10, 17 (Tex. Crim. App. 2013), *reh'g denied* (Mar. 19, 2014).[1,2] But the court also wrote:

---

[1] This rationale does not apply to the fantasy speech expressly criminalized by Section 33.021(c) and (d).

According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep." The State may not justify restrictions on constitutionally *protected* speech on the basis that such restrictions are necessary to effectively suppress constitutionally *unprotected* speech, such as obscenity, child pornography, or the solicitation of minors.

*Ex parte Lo*, 424 S.W.3d 10, 18 (Tex. Crim. App. 2013), *reh'g denied* (Mar. 19, 2014). So the Court of Criminal Appeals gives "the solicitation of minors" as an example of unprotected "speech."[3]

Even aside from *Lo*, there are many cases describing solicitation as speech. *See, e.g., United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("**Speech** attempting to arrange the sexual abuse of children is no more constitutionally protected than **speech** attempting to arrange any other type of crime") (emphasis added); *Karwoski v. State*, 867 So. 2d 486, 488 (Fla. Dist. Ct. App. 2004) ("In this case, it is … **speech** that amounts to seduction, solicitation and enticement of a child to commit a crime that is prohibited) (emphasis added); *LaRose v. State*, 820 N.E.2d 727, 730 (Ind. Ct. App. 2005) ("Indiana Code section 35–42–4–6 criminalizes **speech** sexually soliciting an individual under the belief that the individual solicited is a minor, which is a

---

[2] The *Lo* court did not cite *Maloney* for this proposition, and *Maloney* itself did not hold that Section 33.021(c) prohibits conduct rather than speech.

[3] This is why dicta are not binding.

content-based regulation subject to strict scrutiny") (emphasis added); *Arganbright v. State*, 328 P.3d 1212, 1217 (Okla. Crim. App. 2014) ("This statutory provision causes it to be unlawful for any person to communicate with a minor through the use of electronic technology for the purposes of facilitating, encouraging, offering, or soliciting sexual conduct or communicating sexual or prurient interest with any minor, or other individual the person believes to be a minor. Therefore, we find that the statute regulates **speech** based upon its content or subject matter") (emphasis added); *State v. Rung*, 774 N.W.2d 621, 630 (Neb. 2009) ("Various state courts considering statutes similar to § 28–320.02 have also rejected First Amendment challenges on the basis that **speech** to entice a minor to engage in illegal sexual activity is not speech protected by the First Amendment") (emphasis added). There are certainly many more such cases.

So this court's error in *Lo* (and in *Maloney*) was not in treating "speech" as "conduct," but in treating a content-based restriction on expressive conduct ("speech" in the First Amendment context) as something else.

5

The presumption of invalidity, which follows from the recognition that the statute is a content-based restriction on speech, has some interesting consequences.

- It reverses the presumption that the legislature has not acted unreasonably or arbitrarily (because we cannot presume both that the statute is invalid and that the legislature acted reasonably);

- If a statute can be construed in two different ways, one of which renders it invalid, the court must apply the interpretation that renders it invalid (because it is presumed to be invalid);

- The State carries the burden to establish its constitutionality; and

- The court must reject the statute if it can determine a reasonable construction that will render it unconstitutional (again, because it is presumed to be invalid).

Each of these principles is the converse of the principles listed in the "Principles Governing Constitutionality Review" section of this Court's opinion in *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App—

Houston [1st. Dist.] 2009, pet. ref'd). Because the principles listed in Maloney follow from the presumption of validity,[4] the inverse principles must follow from the presumption of invalidity.

This makes sense: we do not trust the State to constitutionally apply a statute that might be unconstitutionally applied. To trust criminal prosecutors to resist applying a statute unconstitutionally would be to abdicate the court's responsibility to defend the First Amendment. *See U.S. v. Stevens*, 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

## APPLICATION

Section 33.021(c) is presumptively invalid, so this court must presume that the legislature acted unreasonably, apply the interpretation that renders it invalid, and find it unconstitutional if there is a reasonable

---

[4] See, for example, *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("We begin our review of the constitutionality of a statute with the presumption that the statute is valid and assume the legislature did not act arbitrarily and unreasonably in enacting the statute. *Therefore*, if a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity.") (emphasis added, cites omitted).

construction that renders it invalid. The State bears the burden of overcoming this presumption.

For the State to overcome the presumption that the statute is unconstitutional it would have to demonstrate that the overbreadth of the statute was not real and substantial. The State has not tried to do so, much less succeeded.

The unpublished case of *Ex Parte Jennings*, No. 14-09-00817-CR (Tex. App.—Houston [14th Dist] 2010, pet. ref'd) is an example of a case in which the adult complainant represented herself to be a child, and the defendant's knowledge that the complainant was an adult was not permitted as a defense.[5] The crux of Mr. Jennings's case at trial was that he was actually engaging in "role play" and that he knew that the woman with whom he chatted was an adult because she had told him so during previous unrecorded internet conversations. (*Jennings* RR IV at 106.)

During voir dire in *Jennings*, members of the jury panel repeatedly questioned the wording of the charge, and significant

---

[5] Mr. Wheeler doubts that this Court can take judicial notice of the record in an appeal from another court, Jennings, but it's hard to imagine how else Mr. Wheeler might show that Section 33.021 is actually applied to cases of fantasy, were that his burden (it is not).

confusion transpired about whether the prosecutor had to prove the defendant actually believed he was communicating to someone under seventeen. When the prosecutor first read the elements of the offense, a member of the venire quickly spoke up, saying, "So the law says that this behavior is unlawful?" (RR II at 79.) The court attempted to clarify and the following exchange occurred:

> The Court: Hang on, sir, please. Hypothetically if the State proves up that the individual who represented herself to be younger than 17 years of age over the internet, if they proved that up, they've proved the elements of their case. So, that very well may mean that the person is older than 17. But the fact is if they proved that up that they represented themselves to be under 17, a minor, they've proved up that element of the case. They have proved up that violation—that particular part of it. Do you see what I'm saying?
>
> Venire Person: I understand.
>
> The Court: Is there an objection?
>
> Mr. Becker: Yeah. But basically he has to reasonably believe the person is under the age of 17.
>
> The Court: Right.
>
> Mr. Becker: Okay. Not just that the person is over the age of 17, that the person—he reasonably believes the person he's talking with at the time of the conversation was under the age of 17.
>
> Mr. Davis: That's—that's not an element.
>
> The Court: Well, no. Well, the element is this: That the person represented herself to be 17 years of age. All right. And that the communication was sexually explicit in a manner—in the manner. Okay. And that it was for the intent to arouse and gratify the sexual desire of the accused. That's what's alleged in the indictment. Okay. So there you go. If they prove that up, they've proved their case. It may be that the individual was not, in fact, under the age off 17. It may be that the individual—but, you know, represented themselves to be under the age of 17. Now, the question is if they proved that up, the elements, can you follow the law, sir?

9

> Venire Person: I already gave my answer, Your Honor. I was just trying to clarify, you know, that I wouldn't be able to do that.

(*Jennings* RR II at 80-81.)

Members of the jury panel, perhaps not comfortable with the court's explanation, again requested clarification of the issue:

> Venire Person: No. 52. You seem to express in this—a disagreement with the judge over something that I thought I heard, having to do witth the age of 17 or if he knew it was the age of 17. Did I hear—
>
> Venire Person: That was one element.
>
> Mr. Davis: Yes. You did hear disagreement there. That is correct. There is no element that I have to prove that he reasonably believed that she was 17. That's something that the defense tried to say. I said no, that is not an element.
>
> Venire Person: In other words, he could—if it was—
>
> The Court: Okay. Let me explain.
>
> Venire Person: Wait a minute. If he thought this person was over 17 and they could somehow show—
>
> Mr. Davis: How about I get elsewhere on this and maybe we'll see?
>
> The Court: Well, let me—let me stop you right there. Because the requisite mental state for the defendant—the accused's—all right—mental state, what he was thinking is that he did so unlawfully with the intent to arouse and gratify the sexual desire of Thomas Jennings. Okay. And that he intentionally communicated in a sexually explicit manner. That is the—the mental state that they have to prove, that he did so with the intent to gratify his sexual desire. All right. If they don't prove that, then they haven't proved an element. Yes sir?
>
> Venire Person: But for 17—but this person has to be 17 or under?
>
> The Court: No sir. Let's move along.
>
> Venire Person: Okay.
>
> Mr. Davis: Okay. One last thing—yes, sir, No. 45?
>
> Venire Person: Can we have the reading out of the Penal Code?
>
> The Court: No. Let's move along.

(*Jennings* RR II at 82-83.)

Shortly thereafter, another venire person again ventured for an explanation regarding the actual behavior that is criminalized by 33.021:

> Venire Person: Is it entrapment if the john know—the john does not believe that is the activity he's been engaging in is—is it entrapment if the person does not believe that the activity he's engaging in is illegal? In other words, that he believes that the person was of legal age.
>
> Mr. Davis: The question is what your intent is.
>
> Venire Person: Okay.
>
> Mr. Davis: Did you—in the prostitution example: did you intend to exchange money for sex?
>
> Venire Person: Okay.
>
> Mr. Davis: That's the question. In this case it doesn't matter how old the person really was. What matters is did he communicate over the internet in a sexually explicit manner with the intent to arouse and gratify his sexual desire, and did she—and did she tell or give him some awareness or was she purporting to be under the age of 17? That's all that matters.

(*Jennings* RR II at 89-90.)

Some of the venire remained uneasy about the elements of the offense and one member expressed his concern:

> Venire Person: Your Honor, I just want to say I kind of feel the same way. I mean, in some sense, yeah, the law may be what it is. But it seems to be punishing people for, in some sense, their sexual fantasies and not for any real harm that they've done. That's why I'm kind of uneasy about this law.
>
> Mr. Davis: Let me ask you this then, sir—
>
> The Court: Let's move along…

(*Jennings* RR II at 99-100.)

11

At trial the complainant, Lisa Poehl, testified that she worked as a volunteer for PervertedJustice.com, a voluntary "citizen watchdog" type organization, by pretending to be a child in internet chat rooms in order to "catch Internet predators." (*Jennings* RR III at 11, 17.) Mr. Jennings, however, testified that he and Ms. Poehl had several conversations before July 25, 2005. (*Jennings* RR IV at 108.) During these conversations, Ms. Poehl represented herself as being 23 years old and sent him non-pornographic pictures depicting herself as an adult. (*Jennings* RR IV at 107-108.) Appellant testified:

> Q. What were y'all talking about when you had these conversations?
>
> A. Role playing.
>
> Q. What do you mean by role playing?
>
> A. Well, she stated she liked to role play as a 12-year-old or as a young girl.
>
> Q. Okay. And what did you say to that?
>
> A. Well, I've never done it, but, you know, I'll give it a try.
>
> Q. Did you know that the person you were talking to was, in fact, a woman?
>
> A. Well, according to the pictures and what she said, she was a woman.

(*Jennings* RR IV at 108-109.)

During closing argument in *Jennings*, counsel for the defense argued that Appellant was not guilty because he believed that he was talking with a 23 year old woman and the prosecutor argued that it did not matter what Appellant believed. (RR IV at 164, 165, 167.):

> And for the defense to tell you that, oh, well, he didn't think that it was a kid, that would gut the entire purpose of the law. And folks, that why that's not the law no matter how bad he wants to sell it to you that it is. The fact of the matter is I have to prove that she represented herself to be under 17. Duh, that is replete in this.

(*Jennings* RR IV at 167.)

"Duh," indeed: Section 33.021(a)(1) is written to capture people who don't believe they are talking to children. The jury instruction supported the State's argument in *Jennings*, and Mr. Jennings was convicted.

## Substantial Overbreadth

The State has the burden of showing that the statute is not substantially overbroad, but what does that mean? In *Maloney* this Court wrote:

> Considering the overly broad scope and purpose of section 33.021, we have been given no basis to believe that prosecutions of consenting adults engaging in role-playing would amount to any more than a "tiny fraction" of all prosecutions under the statute.

*State v. Maloney*, 294 S.W.3d 613, 628 (Tex. App.—Houston [1st Dist] 2009, pet. ref'd).

The question cannot be whether the State *would* prosecute consenting adults engaging in role play, but whether the State could prosecute such adults. The problem with a statute that is overbroad under the First Amendment is that it has a chilling effect on protected

13

speech, and that chilling effect is not mitigated by the State's good intentions.

## Conclusion

Whether we call it "speech" or "expressive conduct," expression becomes unprotected only when it falls into an unprotected category. And while the solicitation of a child to have sex is unprotected, Section 33.021(c), in conjunction with Section 33.021(d), forbids much more than the solicitation of a child to have sex, and goes much further than is necessary to protect children: it criminalizes fantasy.

And if fantasy may be criminalized, then nothing is safe.

## Certificate of Service

A copy of this brief will be delivered to the attorney for the State by electronic filing.

## Certificate of Compliance

This brief contains 3,164 words, by Microsoft Word's count.

Thank you,

_____

Mark Bennett
SBN 00792970
Bennett & Bennett
917 Franklin Street, Fourth Floor
Houston, Texas 77002
713.224.1747
mb@ivi3.com