ACCEPTED
07-15-00098-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/15/2015 6:09:46 PM
Vivian Long, Clerk

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

6/15/2015 6:09:46 PM

VIVIAN LONG
CLERK

In the Court of Appeals for the
Seventh District Court of Appeals
No. 07-15-000098-CR

Ex Parte

Oscar Calvin Fisher

On Appeal from
The 106th District Court
Garza County, Texas

Trial Court
Cause No. 14-2685

Amended Brief for Appellant

Oral argument requested.

Mark W. Bennett
TBN 00792970
Bennett & Bennett
917 Franklin Street
Fourth Floor
Houston, Texas 77002
Tel. 713.224.1747
Email MB@IVI3.com

Julie Goen Panger
The Kiechler Law Firm PLLC
619 Broadway
Lubbock, Texas 79401

Counsel for Appellant
June 15, 2015

**Statement Regarding Oral Argument**

In *Maloney v. State*, the leading case on the main subject of this brief, the First Court of Appeals erred by applying the wrong standard of review. Then in *Ex Parte Lo*, another First Amendment case, that court made the same error, and was reversed for it. Appellant requests oral argument pursuant to Texas Rule of Appellate Procedure 39.7 in hopes of saving this Court from the same error.

## Names of All Parties

| | |
|---|---|
| Mr. Oscar Calvin Fisher | Appellant |
| Ms. Julie Goen Panger<br>TBN 24069793<br>The Kiechler Law Firm, PLLC<br>619 Broadway<br>Lubbock, Texas 79401 | Trial Counsel for Appellant |
| Mark W. Bennett<br>TBN 00792970<br>Bennett & Bennett<br>917 Franklin Street<br>Fourth Floor<br>Houston, Texas 77002 | Appellate Counsel for Appellant |
| Mr. Jason Bujnosek<br>TBN 24036285<br>Assistant District Attorney<br>District Attorney's Office<br>P.O. Box 1124<br>Lamesa, Texas 79331 | Trial Counsel for Appellee |
| Hon. Carter T. Schildknecht | Judge, 106th District Court, Garza County, Texas |

**Table of Contents**

Statement Regarding Oral Argument .................................................ii

Names of All Parties ..................................................................iii

Table of Contents .....................................................................iv

Table of Authorities ..................................................................vi

Statement of the Case .................................................................1

Procedural History ....................................................................1

Issue Presented........................................................................2

Statement of Facts ....................................................................2

Summary of the Argument.............................................................2

Argument ..............................................................................3

    Point of Error One: The trial court erred in denying Mr. Fisher relief because Section 33.021(b) of the Texas Penal Code is unconstitutionally overbroad in violation of the First Amendment. ...............................................................3

    Point of Error Two: The trial court erred in denying Mr. Fisher relief because what remains of Section 33.021 is also unconstitutionally overbroad in violation of the First Amendment. ............................................................ 4

        What remains of Section 33.021 is presumptively unconstitutional. ...............................................................5

        The usual presumptions are reversed..........................................7

iv

The burden is on the State to rebut the presumption that Section 33.021 is unconstitutional. ........................................................9

What about <u>Maloney v. State</u>? ................................................10

"Conduct vs. speech" is a false dichotomy.................................. 11

The State cannot rebut the presumption that what remains of Section 33.021 is unconstitutional............................................14

There have been two standards of review.................................. 17

The correct approach to overbreadth is categorical. .................... 17

There are nine categories of unprotected speech. ....................... 18

Section 33.021 forbids protected speech. ................................. 18

The unconstitutionally forbidden speech is substantial. ...............23

What about <u>Ex Parte Victorick</u>? ..............................................26

Section 33.021 would also fail strict scrutiny. ...........................27

Point of Error Three: The trial court erred in denying Mr. Fisher relief because what remains of Section 33.021 is unconstitutionally vague in violation of the Fourteenth Amendment. ................................................................................28

Point of Error Four: The trial court erred in denying Mr. Fisher relief because what remains of Section 33.021 violates the Dormant Commerce Clause. ................................................. 30

Prayer for Relief.........................................................................32

Certificate of Service ..................................................................33

Word Count ..............................................................................33

**Table of Authorities**

CASES

*American Libraries Association v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997) .......................................................................34

*Arganbright v. State*, 328 P.3d 1212 (Okla. Crim. App. 2014)...........14

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ......................................9, 10

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ......................... 17, 22, 24

*Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) ...........................25

*Connally v. General Construction Co.*, 269 U.S. 385 (1926) .............31

*Duncantell v. State*, 230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ........................................................8

*Ely v. State*, 582 S.W.2d 416 (Tex. Crim. App. 1979) ..........................9

*Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), ..................passim

*Ex Parte Thompson*, 442 S.W.3d 347 (Tex. Crim. App. 2014)...6, 16, 19

*Ex Parte Victorick*, 2014 WL 2142129, No. 09-13-005510-CR (Tex. App. — Beaumont May 21, 2014, pet. ref'd.) .................28, 29

*Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S. 173 (1999) ................................................................16

*Karwoski v. State*, 867 So. 2d 486 (Fla. Dist. Ct. App. 2004) ............14

*LaRose v. State*, 820 N.E.2d 727 (Ind. Ct. App. 2005) ......................14

*Maloney v. State*, 294 S.W.3d 613 (Tex. App. — Houston [1st Dist. 2009, pet. ref'd.) ..........................................................passim

*State v. Rung*, 774 N.W.2d 621 (Neb. 2009) ...................................15

*United States v. Alvarez*, 132 S.Ct. 2357, 567 U.S. ____ (2012)...19, 20

*United States v. Hornaday*, 392 F.3d 1306 (11th Cir. 2004) ........ 14, 29

*United States v. Stevens*, 559 U.S. 460 (2010) ................. 9, 12, 19, 20

*United States v. Williams*, 553 U.S. 285 (2008) .................... 11, 22, 29

<u>STATUTES</u>

Tex. Penal Code § 33.021 ........................................... passim

| | |
|---|---|
| Ex Parte | On Appeal from<br>The 106th District Court<br>Garza County, Texas |
| Oscar Calvin Fisher | Trial Court<br>Cause No. 14-2685 |

### Brief for Appellant

To the Honorable Court of Appeals:

## Statement of the Case

Oscar Calvin Fisher appeals the trial court's denial of his *Application for Writ of Habeas Corpus* (Clerk's Record (CR 89)).

❧

## Procedural History

On January 28, 2014, Mr. Fisher was indicted for two counts of Online Solicitation of a Minor. The first count was pled under Section 33.021(c) of the Texas Penal Code. (CR 4.) The second count was pled under Section 33.021(b) of the Texas Penal Code. (CR 4–5.)

On August 25, 2014, Mr. Fisher filed his *Application for Writ of Habeas Corpus and Exception to Substance of Indictment* making as-written challenges to Section 33.021 of the Texas Penal Code. (CR 23.)

On December 16, 2014, the Court denied Mr. Fisher's *Application for Writ of Habeas Corpus and Exception to Substance of Indictment* on the merits. (CR 89.)

Mr. Fisher filed a timely notice of appeal. (CR 92.)

❧

## Issue Presented

The trial court erred in denying relief because Section 33.021 of the Texas Penal Code is unconstitutional.

❧

## Statement of Facts

This is an as-written challenge to a statute. The facts of the underlying case are not relevant to such a challenge.

❧

## Summary of the Argument

In *Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), the Texas Court of Criminal Appeals held unconstitutional Section 33.021(b) of the Texas Penal Code.

What remains of Section 33.021 of the Texas Penal Code after *Lo* forbids a substantial amount of speech that is protected under the First

Amendment: speech that is either not soliciting, or is directed at an adult whom the speaker does not believe to be a child.

Section 33.021 is entitled, "Online Solicitation of a Minor," and online solicitation of a child is not constitutionally protected speech. But how many legs does a dog have, if the Texas Legislature calls a tail "a leg"? *Four: calling a tail a leg doesn't make it so.* A "minor" under Section 33.021 may be an adult, and "solicitation" under Section 33.021 may be fantasy speech. Section 33.021 is unconstitutionally overbroad in violation of the First Amendment (Points of Error One and Two), it is unconstitutionally vague in violation of the Fourteenth Amendment (Point of Error Three), and it violates the Dormant Commerce Clause (Point of Error Four).

 え

## Argument

Point of Error One: The trial court erred in denying Mr. Fisher relief because Section 33.021(b) of the Texas Penal Code is unconstitutionally overbroad in violation of the First Amendment.

In Count Two of the indictment (CR 4–5) Mr. Fisher is charged under Section 33.021(b) of the Texas Penal Code, which the Texas Court of Criminal Appeals held unconstitutional in *Ex Parte Lo*, 424 S.W.3d 10

(Tex. Crim. App. 2013). Because Section 33.021(b) is void, the trial court erred in denying Mr. Fisher relief as to Count Two.

❧

Point of Error Two: The trial court erred in denying Mr. Fisher relief because what remains of Section 33.021 is also unconstitutionally overbroad in violation of the First Amendment.

In Count One of the indictment (CR 4), Mr. Fisher is charged under what remains of Section 33.021 of the Texas Penal Code.

While the State may constitutionally forbid speech that is intended to lead to sex with children, in Section 33.021 it also forbids speech that it may not constitutionally forbid: speech that is intended to lead to sex with adults (subsection (a)(1)(A)); and speech that is not intended to result in sex with either children or adults (subsections (d)(2), (3)):

> ONLINE SOLICITATION OF A MINOR. (a) In this section:
>
> (1) "Minor" means:
>
> (A) an individual who represents himself or herself to be younger than 17 years of age; or
>
> (B) an individual whom the actor believes to be younger than 17 years of age.
>
> (2) "Sexual contact," "sexual intercourse," and "deviate sexual intercourse" have the meanings assigned by Section 21.01.

4

* * *

(c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

(d) It is not a defense to prosecution under Subsection (c) that:

(1) the meeting did not occur;

(2) the actor did not intend for the meeting to occur; or

(3) the actor was engaged in a fantasy at the time of commission of the offense.

….

TEX. PENAL CODE § 33.021.

❧

*What remains of Section 33.021 is presumptively unconstitutional.*

"Congress shall make no law … abridging the freedom of speech…."

U.S. CONST. AMEND. I.

"Content-based regulations of speech are presumptively invalid." *Ex Parte Lo* at 14 fn 6 (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)).

"If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based." *Ex Parte Lo*, 424 S.W.3d at 15 fn. 12.

An otherwise content-neutral restriction may be rendered content-based if it discriminates because of the intent of the speech. *See Ex Parte Thompson*, 442 S.W.3d 325, 347 (Tex. Crim. App. 2014) (holding that a portion of Section 21.15 of the Texas Penal Code was content-based because it discriminated on the basis of the underlying sexual thought).

To determine whether speech violates Section 33.021(c), a factfinder must discern both the content of the speech (whether it solicits a minor to meet) and the speaker's intent (whether the speaker intends for a minor to engage in sexual conduct).

Because the factfinder must consider both the content of the speech and the speaker's intent in determining whether speech violates Section 33.021(c), Section 33.021(c) is a content-based restriction on speech.

Because Section 33.021 is a content-based restriction on speech it is presumptively invalid.

❧

*The usual presumptions are reversed.*

In *Maloney v. State* the First Court of Appeals listed several "principles governing constitutionality review:"

> When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity. The party challenging the statute carries the burden to establish its unconstitutionality. We must uphold the statute if we can determine a reasonable construction that will render it constitutional.

*Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App. — Houston [1st Dist. 2009, pet. ref'd.) (cites omitted).

The presumption of Section 33.021's invalidity, which follows from the recognition that the statute is a content-based restriction on speech, has interesting and important consequences, which are the converse of *Maloney*'s "principles":

- It creates a presumption that the legislature has acted unreasonably or arbitrarily in passing Section 33.021 (because if the legislature passed an unconstitutional statute, it acted unreasonably or arbitrarily);
- If Section 33.021 can be construed in two different ways, one of which renders it invalid, the court must apply the interpretation that renders it invalid. In *Duncantell v. State* the Fourteenth court wrote, "We begin our review of the constitutionality of a statute with the presumption that the statute is valid and assume the legislature did not act arbi-

7

trarily and unreasonably in enacting the statute. *Therefore*, if a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity." *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (emphasis added, cites omitted). Just as the presumption of *validity* leads to the principle that the statute must be interpreted to sustain its *validity* if possible, so does the presumption of *invalidity* leads to the principle that the statute must be interpreted to sustain its *invalidity* if possible;

- The State carries the burden to establish Section 33.021's constitutionality. *Ex parte Lo*, 424 S.W.3d at 15; *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004).; and

- The court must reject Section 33.021 if it can determine a reasonable construction that will render it unconstitutional. In *Ely v. State* the Court of Criminal Appeals held that "this [non-content-based] statute is vested with a presumption of validity and this Court is duty bound to construe such statutes in such a way as to uphold their constitutionality." *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979). Just as courts are bound to construe presumptively *valid* statutes in such a way as to uphold their constitutionality, they are bound to construe presumptively *invalid* statutes in such a way as to overturn them.

This makes sense: we presume that a statute that might be unconstitutionally applied will be because we do not trust the State not to apply such a statute unconstitutionally. To trust criminal prosecutors

8

to resist applying a statute unconstitutionally would be to abdicate courts' responsibility to defend the First Amendment. *See U.S. v. Stevens*, 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

સ

*The burden is on the State to rebut the presumption that Section 33.021 is unconstitutional.*

The statute is presumed to be unconstitutional. The government bears the burden to rebut that presumption. *Ex parte Lo* at 15; *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004).

> Indeed, were we to give the Government the benefit of the doubt when it attempted to restrict speech, we would risk leaving regulations in place that sought to shape our unique personalities or to silence dissenting ideas. When First Amendment compliance is the point to be proved, the risk of nonpersuasion—operative in all trials—must rest with the Government, not with the citizen.

*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 818, 120 S. Ct. 1878, 1889, 146 L. Ed. 2d 865 (2000).

સ

9

*What about <u>Maloney v. State?</u>*

In *Maloney v. State*, 294 S.W.3d 613 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) the First Court of Appeals upheld the constitutionality of Section 33.021(c) in the face of vagueness and overbreadth challenges. It analyzed the statute as one regulating conduct rather than speech.

In *Ex Parte Lo*, similarly, the Court of Criminal Appeals in *dicta* discussed Section 33.021(c) as a conduct- rather than a speech-restricting statute. *See Lo*, 424 S.W.3d at 17.

That analysis, and that discussion, is wrong. Even incitement to commit a crime is speech—it may be *unprotected* speech, but it is speech nonetheless. *See, e.g., United States v. Williams*, 553 U.S. 285, 298 (2008) ("Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize **speech** (commercial or not) that is intended to induce or commence illegal activities") (emphasis added).

In *Maloney* the First Court did not have the benefit of the record in this case, which includes evidence of the prevalence of sexual make-believe among adults representing themselves, known as "ageplay." (CR 32–46.) *See Maloney*, 294 S.W.3d at 628 ("we have been given no

10

basis to believe that prosecutions of consenting adults engaging in role-playing would amount to any more than a "tiny fraction" of all prosecutions under the statute"). Nor did the First Court in *Maloney* have the benefit of *Lo v. State*, or of the United States Supreme Court's most recent cases addressing First Amendment challenges to penal statutes: *Stevens*, 559 U.S. 460, and *Alvarez*, 132 S.Ct. 2357 .

Undersigned counsel Bennett represented Mr. Lo in *Ex Parte Lo*, 424 S.W.3d 10. In that case neither the effect of Section 33.021(d), eliminating the intent-to-meet element of solicitation from Section 33.021(c), nor the effect of Section 33.021(a)(1), criminalizing speech among consenting adults, was briefed or discussed in argument. None of the cases on which the Texas Court of Criminal Appeals' analysis of Section 33.021(c) relied upheld statutes such as Section 33.021 in which the intent to meet is expressly disavowed. *Lo*'s discussion of Section 33.021(c) was *dicta*. *See id.* at 14–15.

❧

*"Conduct vs. speech" is a false dichotomy.*

Neither the United States Supreme Court nor the Texas Court of Criminal Appeals distinguishes between expressive conduct and other speech in the First Amendment context.

11

In *Lo* the Court of Criminal Appeals made an off-hand remark in dicta about Section 33.021(c) forbidding conduct: "it is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense." *Ex parte Lo*, 424 S.W.3d 10, 17 (Tex. Crim. App. 2013), *reh'g denied* (Mar. 19, 2014).[1] But the court also wrote:

> According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep." The State may not justify restrictions on constitutionally *protected* speech on the basis that such restrictions are necessary to effectively suppress constitutionally *unprotected* speech, such as obscenity, child pornography, or the solicitation of minors.

*Ex parte Lo* at 18. So the Court of Criminal Appeals gives "the solicitation of minors" as an example not of "conduct" but of unprotected "speech."[2]

Even aside from *Lo*, there are many cases describing solicitation as speech. *See, e.g., United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("**Speech** attempting to arrange the sexual abuse of children is no more constitutionally protected than **speech** attempting to arrange any other type of crime") (emphasis added); *Karwoski v.*

---

[1] This rationale does not apply to the fantasy speech expressly criminalized by Section 33.021(c) and (d), nor to the age-play criminalized by Section 33.021(c) and (a)(1)(A).

[2] This internal contradiction in *Lo* illustrates why dicta are not binding.

*State*, 867 So. 2d 486, 488 (Fla. Dist. Ct. App. 2004) ("In this case, it is … **speech** that amounts to seduction, solicitation and enticement of a child to commit a crime that is prohibited) (emphasis added); *LaRose v. State*, 820 N.E.2d 727, 730 (Ind. Ct. App. 2005) ("Indiana Code section 35–42–4–6 criminalizes **speech** sexually soliciting an individual under the belief that the individual solicited is a minor, which is a content-based regulation subject to strict scrutiny") (emphasis added); *Arganbright v. State*, 328 P.3d 1212, 1217 (Okla. Crim. App. 2014) ("This statutory provision causes it to be unlawful for any person to communicate with a minor through the use of electronic technology for the purposes of facilitating, encouraging, offering, or soliciting sexual conduct or communicating sexual or prurient interest with any minor, or other individual the person believes to be a minor. Therefore, we find that the statute regulates **speech** based upon its content or subject matter") (emphasis added); *State v. Rung*, 774 N.W.2d 621, 630 (Neb. 2009) ("Various state courts considering statutes similar to § 28–320.02 have also rejected First Amendment challenges on the basis that **speech** to entice a minor to engage in illegal sexual activity is not speech protected by the First Amendment") (emphasis added). There are certainly many more such cases.

There is a distinction in First Amendment law between "content-based" and "content-neutral" restrictions on speech. Because the content of the speech must be considered in determining whether a communication violates Section 33.021, the State cannot argue that Section 33.021 is content-neutral. *See Ex Parte Lo* at 15 fn. 12 ("If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based.").

❧

*The State cannot rebut the presumption that what remains of Section 33.021 is unconstitutional.*

"It is rare that a regulation restricting speech because of its content will ever be permissible." *Ex parte Thompson*, 442 S.W.3d 325, 348 (Tex. Crim. App. 2014) (citing *Brown v. Entertainment Merchants Ass'n.,* ____ U.S. ____, 131 S.Ct. 2729, 2738 (2011)).

To rebut the presumption of unconstitutionality that arises when a statute is a content-based restriction on speech, the State would have to show that the statute did not forbid a real and substantial amount of protected speech, compared to the legitimate sweep of the statute. *See Greater New Orleans Broadcasting Assn., Inc. v. United States*, 527 U.S.

14

173, 183 (1999) ("[T]he Government bears the burden of identifying a substantial interest and justifying the challenged restriction").

"The legitimate sweep" of a content-based restriction on speech is the forbidden speech that is not protected by the First Amendment. The legitimate sweep of Section 33.021 is speech that is intended to result in the imminent commission of sex crimes against children: incitement under *Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969) ("the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy … of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action").

In addition to its legitimate sweep, however, Section 33.021 has a broad illegitimate sweep: speech that is not intended to result in sex crimes against children.

In subsection (a) the statute defines "minor" to include not only a person whom the actor believes to be a child, but also a person whom the actor does not believe to be a child, but who has represented himself to be a child. A person who is pretending to be a child is "representing himself" to be a child, whether the actor believes that representation or not; the statute, with its separate definitions for "repre-

15

sentation" and "belief," makes that clear. Speech by one adult to another whom he knows to be an adult is not "directed to inciting or producing imminent lawless action" and so is protected.

In subsection (d)(3) the statute forbids a fantasy defense. Fantasy speech is not "directed to inciting or producing imminent lawless action."[3]

Fantasy speech soliciting sex with someone whom the actor does not believe to be a child, but who is pretending ("representing himself") to be a child is called "age play"; as Mr. Fisher showed in the trial court (CR 32–46, Exhibit A to *Application for Writ of Habeas Corpus and Exception to Substance of the Indictment*), this speech is real and substantial. The State—which has the burden—has provided no evidence to the contrary.

In subsection (d)(2) the statute bars a lack-of-intent defense. Speech, even to a child, that lacks an intent to meet, is not "directed to inciting or producing imminent lawless action," and so is not unprotected.

❧

---

[3] "Sexual expression which is indecent but not obscene is protected by the First Amendment." *Ex parte Lo*, 424 S.W.3d at 20.

16

*There have been two standards of review.*

Because the United States Supreme Court applies a categorical approach to a content-based penal statute, that approach is (by definition) correct. See *United States v. Stevens*, 559 U.S. 460 (2010), and *United States v. Alvarez*, 132 S.Ct. 2537, 567 U.S. ____ (2012) (both holding penal statutes unconstitutional, neither applying strict scrutiny). Because the Court of Criminal Appeals applies the strict-scrutiny standard of review, this brief will discuss that standard as well. See *Ex Parte Thompson*; *Ex Parte Lo*. Section 33.021 fails under either.

❧

*The correct approach to overbreadth is categorical.*

The Supreme Court's modern approach to First-Amendment law is a categorical inquiry: if the statute is a content-based restriction on speech, and if the restricted speech does not fall into one of a few narrowly-defined categories of historically unprotected speech, the statute is void. *See Stevens*, 559 U.S. 460; *Alvarez*, 132 S. Ct. 2537.

The speech restricted by the remnants of Section 33.021 falls into no category of historically unprotected speech.

❧

*There are nine categories of unprotected speech.*

Content-based restrictions on speech have been permitted, as a general matter, only when confined to the few "historic and traditional categories [of expression] long familiar to the bar," *Stevens*, 559 U.S. at 468. To rebut the presumption that Section 33.021 is invalid, the State must show that the restricted speech falls into one of a few narrowly defined categories of historically unprotected speech.

> Among these categories are advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called "fighting words"; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent, although a restriction under the last category is most difficult to sustain. These categories have a historical foundation in the Court's free speech tradition. The vast realm of free speech and thought always protected in our tradition can still thrive, and even be furthered, by adherence to those categories and rules.

*Alvarez*, 132 S. Ct. at 2544 (citations omitted).

❧

*Section 33.021 forbids protected speech.*

All speech that does not fall into one of those nine categories is protected by the First Amendment.

18

The only one of these categories into which the speech restricted by Section 33.021 even arguably falls is the first: *speech intended and likely to incite imminent lawless action*—in a word, "incitement."[4]

When it is read in isolation Section 33.021(c) appears to forbid only incitement—a communication with the intent that a real-world (that is, non-speech) crime be committed:

> (c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Penal Code §33.021(c).

"Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech (commercial or not) that is intended to induce or commence illegal activities." *Williams*, 553 U.S. at 298.[5]

---

[4] Some speech forbidden by Section 33.021 might *incidentally* be obscene, or integral to criminal conduct, or present some grave and imminent threat the government has the power to prevent. But as defined by Section 33.021, the speech forbidden is none of these things.

[5] Following *Williams*'s language, we might consider "solicitation" a tenth category of unprotected speech, separate from "incitement." That category would still require the intent that *a crime* be committed, so the analysis would remain the same. Age-play is not an offer to commit a crime.

19

Various anti-child-solicitation statutes have been upheld. And soliciting a child to meet for sex may be "directed to inciting or producing imminent lawless action and is likely to incite or produce such action," and so be unprotected under the *Brandenburg* test for unprotected incitement. *See Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969) ("the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy … of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action").

But the balance of Section 33.021 takes the forbidden speech out of the category of incitement for two reasons. First, a "minor" under Section 33.021 is not necessarily a child, but may be an adult whom the defendant knows to be an adult:

> "Minor" means:
>
> (A) an individual who represents himself or herself to be younger than 17 years of age; or
>
> (B) an individual whom the actor believes to be younger than 17 years of age.

Tex. Penal Code §33.021(a)(1). A "minor" who falls under subsection (a)(1)(A) but not under subsection (a)(1)(B) is someone who represents himself to be younger than seventeen, but whom the defendant

does not believe to be younger than seventeen. He may be older than seventeen. Subsection (a)(1)(A) targets communications with such complainants, but a defendant would not commit a crime by having consensual sex with an adult "minor" who represented himself to be younger than seventeen.

Second, under Section 33.021(d),

> It is not a defense to prosecution under Subsection (c) that:…
>
> (2)  the actor did not intend for the meeting to occur;  or
>
> (3)  the actor was engaged in a fantasy at the time of commission of the offense.

If the defendant did not intend for the meeting to occur or if he was engaged in a fantasy at the time of his communication, then his words were not "directed to producing imminent lawless action"; were not incitement; and do not lose First Amendment protection.

Sections 33.021(c), (a)(1) and (d) combined explicitly criminalize fantasy: they forbid speech—fantasy speech—that is protected by the First Amendment.

The essence of unprotected "incitement" is the intent that a crime be committed imminently. *See Brandenburg* at 447 (1969) ("the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of … law violation except where

such advocacy *is directed to inciting or producing imminent lawless action and is likely to incite or produce such action*") (emphasis added). If there is no intent that a crime be imminently committed, there is no incitement.

As the Court of Criminal Appeals noted in *Lo*,

> Many states have enacted statutes aimed at preventing the solicitation of minors over the internet. Courts all across the United States have upheld these statutes. They share either of two characteristics: (1) the definition of the banned communication usually tracks the definition of obscenity as defined by the Supreme Court in *Miller v. California*; or (2) the statutes include a *specific intent* to commit an illegal sexual act, i.e., the actor intends to "solicit" or "lure" a minor to commit a sexual act.

*Ex Parte Lo* at 21 (emphasis added). Fantasy speech—speech with no specific intent to commit an illegal sexual act—is not incitement. So while Section 33.021(c) apparently includes a specific intent to commit an illegal sexual act, which would make the speech incitement, sections 33.021(a)(1), (d)(2), and (d)(3) explicitly eliminate that element.[6] The speech forbidden by the totality of Section 33.021 is explicitly not incitement.

❧

---

[6] This particular problem has been corrected by the Texas Legislature. Effective September 1, 2015, Section 33.021(a)(1) will require that the complainant be a minor or that the actor believe the complainant to be a minor; Section 33.021(d)(2) and (3) will have been eliminated. See Texas Senate Bill 344, signed by the Governor on May 22, 2015.

*The unconstitutionally forbidden speech is substantial.*

As part of the State's burden of rebutting the presumption of Section 33.021's unconstitutionality the State must show that the protected speech is not substantial compared to the legitimate reach of the statute. The State cannot do so.

Substantial overbreadth is not to be measured in absolute terms, but "in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

The illegitimate Section 33.021 requires the conviction of a defendant who speaks apparently soliciting words but does not intend that a crime be committed, whether because he knows that the object of his sexual attention, who "represents himself" to be a child, is not in fact a child; or because he does not intend that a meeting occur. Such a defendant's speech is not unprotected incitement, but the remains of Section 33.021 require his punishment, including his imprisonment.

The speech described in the preceding paragraph—apparently soliciting words spoken by someone who knows that the object of his sexual attention is only pretending to be a child, or who does not in-

23

tend that a meeting occur—is "ageplay." Ageplay is protected speech (that is, it does not fall into any category of unprotected speech).

While Mr. Fisher has no burden beyond showing that the statute is a content-based restriction on speech, he has presented uncontested evidence that it is substantial. *Please see* CR 16–29, *The Prevalence and Scope of Ageplay*. A search for <age play erotica> books on Amazon.com turns up more than 3,000 results.[7]

While the number of people interested in ageplay may not be huge in absolute numbers, neither is the number of people willing to solicit sex with actual children. For every person willing to engage in extreme human behavior (here, sexual assault of children) there will always be many more people interested in a tamer version (here, ageplay).

If soliciting speech with people who represent themselves (but are not believed) to be children were not substantial in relation to soliciting speech with actual children, why would the Texas Legislature have addressed such speech with Section 33.021(a)(1)? If fantasy speech and soliciting speech with no intent to meet were not substan-

---

[7]http://www.amazon.com/s/?url=search-alias%3Dstripbooks&field-keywords=age+play+erotica (accessed January 1, 2015).

tial, why would the Texas Legislature have addressed them in Section 33.021(d)? It is no answer to say that the Texas Legislature intended only to eliminate defendants' *false* claims that they knew their correspondents to be adults, or that they did not intend to meet their correspondents: in all other cases we trust juries to determine what defendants believed and intended, and we do not eliminate valid and constitutionally required defenses in the interest of preventing the abuse of those defenses.

If Section 33.021(a)(1) did not define "minor" to include a person whom the defendant knows to be an adult, and if Section 33.021(d) did not exclude the defenses of fantasy and lack of intent then Section 33.021(c) would forbid only true solicitation. But sex between consenting adults is not a crime, and solicitation without intent is not solicitation. Because true solicitation requires the specific intent that *a crime* be *imminently committed*, Section 33.021(c) regulates speech other than true solicitation.

Because Section 33.021 forbids a substantial amount of protected speech, it is void.

❧

*What about Ex Parte Victorick?*

In the unpublished *Ex Parte Victorick* the Beaumont Court of Appeals addressed a mess of complaints about the unconstitutionality of Section 33.021(c). *Ex Parte Victorick*, 2014 WL 2152129, No. 09-13-005510-CR (Tex. App. — Beaumont May 21, 2014, pet. ref'd.).

In its *Victorick* opinion the Beaumont Court did not address the contention that Section 33.021(d) eliminates the specific-intent element from Section 33.021(c), nor even mention Section 33.021(d).

Based only on the dicta in *Lo*, the *Victorick* court concluded that Section 33.021(c) "punishes conduct rather than the content of speech alone." This is a false conclusion. *See Williams*, 553 U.S. 285 (analyzing a statute that criminalizes "advertis[ing], promot[ing], present[ing], distribut[ing], or solicit[ing] child pornography as one that "penalizes *speech* that accompanies or seeks to induce a transfer of child pornography") (emphasis added); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("*Speech* attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime") (emphasis added).

26

Because the *Victorick* court called speech "conduct" it applied the wrong test and came to the wrong conclusion.

ও

*Section 33.021 would also fail strict scrutiny.*

Before adopting the categorical test of *Alvarez* and *Stevens* the United States Supreme Court applied the strict scrutiny test of *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. at 813 to content-based restrictions on speech. This is the test that the Texas Court of Criminal Appeals applied in *Ex Parte Lo* to hold Section 33.021(b) unconstitutional; the balance of Section 33.021 fails strict scrutiny as it does the more modern categorical test.

To satisfy strict scrutiny under the *Playboy* test, a law that regulated speech based on its content had to be (1) necessary to serve a (2) compelling state interest and (3) narrowly drawn. Because such a statute was presumed to be unconstitutional, it was the burden of the State to show that these three elements were met. Section 33.021 serves a compelling state interest, but it is not narrowly drawn to serve that interest: it covers not only solicitation of children, but also solicitation of consenting adults playing make-believe, as well as fantasy talk (short of

27

solicitation) toward children.[8] Because Section 33.021, read together, is not narrowly drawn, Section 33.021 is unconstitutional.

❧

Point of Error Three: The trial court erred in denying Mr. Fisher relief because what remains of Section 33.021 is unconstitutionally vague in violation of the Fourteenth Amendment.

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law...." U.S. CONST. AMEND. XIV.

> [T]he terms of a penal statute … must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties … and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926).

The San Antonio court of appeals has rejected a vagueness attack on Section 33.021. In the crux of its opinion the court inadvertently illustrates the vagueness of the statute:

> **The requisite intent** arises within the conduct of soliciting the minor, and **must exist at the time of the prohibited conduct of solicitation**. *Id*. In-

---

[8] The new Section 33.021, as amended by the Texas Legislature this session and signed by the governor, is an example of a more narrowly drawn statute.

28

> deed, it is the requirement that the defendant must solicit "with the intent that the minor will engage in sexual contact" that operates to make otherwise innocent conduct, i.e., soliciting a minor to meet, into criminal conduct. **It follows then**, that for purposes of a subsection (c) solicitation offense, it does not matter what happens after the solicitation occurs because the offense has been completed; **it does not matter** whether the solicited meeting actually occurs, or **that the defendant did not intend for the meeting to actually occur, or that the defendant was engaged in a fantasy at the time of the solicitation**.

*Zavala*, 421 S.W.3d at 232 (emphasis added).

Of course what happens after the solicitation does not matter; neither does whether the solicited meeting actually occurs. But it cannot be true that …

> "[I]t does not matter … that the defendant did not intend for the meeting to actually occur, or that the defendant was engaged in a fantasy at the time of the solicitation."…

… "follows" from …

> "The requisite intent [that the minor engage in sexual contact] … must exist at the time of the prohibited conduct of solicitation."

*Id.* Those two propositions are direct opposites. Either the defendant intended at the time of the solicitation to meet and have sex with a child, or he did not. If the defendant did not intend for a meeting to occur, then he did not intend that the "minor" engage in sexual contact. Either it matters what the defendant intended, or it does not.

As the First Court has said, it does not matter, according to the statute, what the defendant intended: "[S]ubsection 33.021(d) pro-

vides that an accused cannot defend against an online solicitation of a minor charge by asserting that he was engaged in a fantasy at the time of commission of the offense." *Maloney*, 294 S.W.3d at 626.

Section 33.021(d) eliminates the intent element from Section 33.021(c). As a result, Section 33.021 forbids "solicitation" that is not intended to result in a meeting. People of common intelligence must necessarily guess at the meaning of Section 33.021 and—like the First Court and the San Antonio Court of Appeals—differ as to its application. So even if Section 33.021 were not overbroad—if it did not punish a substantial amount of constitutionally protected fantasy or ageplay—it would be void for vagueness under the Due Process Clause of the United States Constitution.

❧

Point of Error Four: The trial court erred in denying Mr. Fisher relief because what remains of Section 33.021 violates the Dormant Commerce Clause.

If Section 33.021 were neither overbroad nor vague, it would still violate the Dormant Commerce Clause: it unduly burdens interstate commerce by attempting to place regulations on Internet users everywhere, to forbid online ageplay everywhere. This "negative aspect" of the Commerce Clause represents the notion that by specifically grant-

30

ing the United States Congress the power to legislate in this area, the Commerce Clause prohibits the states from legislation that unduly restricts interstate commerce. U.S.C.A. Const. Art. I § 8.

In *American Libraries Association v. Pataki*, the U.S. District Court for the Southern District of New York struck down, as violative of the Dormant Commerce Clause, a law that made it a crime for an individual to use a computer to communicate sexual material harmful to a minor. *American Libraries Association v. Pataki*, 969 F. Supp. 160, 163 (S.D.N.Y. 1997). The court held that the statute violated the negative aspect of the Commerce Clause because it unduly burdened interstate commerce in the traffic of goods, services, and ideas. *Id.* at 184. Likewise, it is impossible to restrict the effects of Section 33.021 to conduct occurring within Texas. Section 33.021 seeks to regulate communications occurring wholly outside Texas; it imposes a burden on interstate commerce that is disproportionate to the local benefits it is likely to engender; and it subjects Internet users to inconsistent state obligations. *See id.*

❧

**Prayer for Relief**

For these reasons, Mr. Fisher asks the Honorable Court of Appeals to reverse the trial court's denial of habeas corpus relief and remand the case to the trial court with orders to dismiss the indictment.

❧

Respectfully Submitted,

Mark W. Bennett
Counsel for Appellant

## Certificate of Service

A copy of this Brief for Appellant has been served upon the State of Texas by electronic filing.

## Word Count

According to Microsoft Word's word count, this brief contains 6,034 words, not including the: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

_____
Mark W. Bennett